EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ERNESTO RUBIO, acusado y apelante.

Núm. 7120.—*Sometido:* Junio 22, 1938. *Resuelto:* Julio 14, 1938.

*Luis Mercader*, abogado del apelante; *R. A. Gómez, Fiscal*, y *Luis Janer, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

En este caso el Fiscal radicó acusación contra Ernesto Rubio y Lupercio Pagán Pabón, por tener para la venta leche de vaca adulterada con agua añadida artificialmente con el fin de dedicarla al consumo humano (Ley núm. 77 de 1925, pág. 559).

El día de la vista Lupercio Pagán se declaró culpable y la corte le impuso $25 de multa. Ernesto Rubio hizo alegación de inocente y se procedió a la práctica de la prueba.

El primer testigo del Fiscal, Víctor Manuel Saavedra, Inspector de Sanidad, dijo en síntesis: que el día 17 de marzo, a las 2:30 de la tarde, en la calle La Palma, de Arecibo, encontró un transporte de leche que estaba rotulado "Vaquería de Ernesto Rubio" que no tenía número de licencia porque Ernesto Rubio tenía en trámites una licencia, pero no se le había extendido aún; que dicho transporte de leche lo conducía Lupercio Pagán; que la leche iba en distintos envases; que tomaron varias muestras y una resultó adulterada; que los jarros iban cerrados con candado; que el peón traía las llaves en el bolsillo y abrió los envases; que dicho Lupercio Pagán trabajaba con Ernesto Rubio; que conoce a Ernesto Rubio y que éste hace mucho tiempo se dedica al negocio de leche; que el testigo le había tomado muestras a menudo y que no tiene conocimiento de que hubiese sido denunciado antes.

Luis M. Guillermety, Químico del Departamento de Sanidad Insular y testigo del Fiscal, declaró que la muestra de leche marcada VMS1137 contenía aproximadamente 45 por ciento de agua añadida artificialmente.

La prueba de la defensa se concretó a la declaración del acusado. A preguntas de su abogado declaró el Sr. Ernesto Rubio: que Lupercio Pagán fué empleado de él; que tiene negocio de leche desde que llegó a Arecibo y anteriormente lo tenía en Aguadilla; que hace más de veinticinco años que trafica en ese artículo; que fué notificado de que a Lupercio Pagán le habían tomado unas muestras; que fué al Departamento de Sanidad y allí le informaron que acostumbraban, todas las semanas, tomar muestras de leche; que al ver el carrito por la calle le dijeron que iban a abrir los envases para coger muestras; que entonces el muchacho sacó las llaves del bolsillo y abrió los candados; que Lupercio Pagán Pabón no estaba autorizado para conducir las llaves de los

envases, las que el acusado guardaba, unas, en el establo, y las otras las tenían los clientes; que una vez cerrados los envases en el establo se guardaban las llaves y entonces el conductor iba con la leche a entregarla a los clientes, los que tenían la llave correspondiente; que el conductor no debía tenerlas; que él nunca autorizó a Lupercio a cogerlas; que todas las semanas le cogían muestras y que nunca habían resultado adulteradas; que este sistema de candados fué impuesto por el Departamento de Sanidad para evitar la adulteración en el camino y para salvar la responsabilidad del dueño del establo; que él nunca estaba presente cuando se ordeñaba; que había dado órdenes al ordeñador que tuviera las llaves en el establo.

Fué ésta la evidencia que tuvo ante sí la Corte de Distrito de Arecibo al dictar la sentencia que declaró al apelante convicto del delito de adulteración de leche y le impuso $25 de multa y las costas.

Un solo error imputa el apelante a la corte inferior, consistente en que, según el acusado, la corte, al dictar sentencia, manifestó que aunque tenía la certeza moral de que el acusado no era capaz de haber adulterado la leche, sin embargo la evidencia demostraba que tenía para la venta leche adulterada.

Hemos examinado el récord completo de este caso y no aparece del mismo que la corte hiciera tal manifestación; pero asumiendo que la hubiese hecho, la evidencia que tuvo ante sí la corte *a quo* no permitía otra conclusión que aquélla a que llegó en su sentencia.

Son hechos aceptados sin discusión alguna que el acusado era el dueño de la vaquería de donde procedía la leche, que ésta había sido adulterada, que se vendía para el consumo humano, y que el coacusado Lupercio Pagán Pabón era su empleado. El hecho de que Pagán, desobedeciendo las instrucciones de su principal, llevase consigo las llaves o que la leche hubiere sido adulterada por el propio Pagán o por algún otro empleado de la vaquería antes de poner los can-

dados a los envases, no altera en manera alguna la responsabilidad del acusado.

En el caso de *El Pueblo* v. *Morales,* 47 D.P.R. 762, los hechos eran más favorables al apelante que los del que nos ocupa y sin embargo este tribunal confirmó la sentencia que se impuso al dueño del puesto de leche a pesar de probarse que fué el empleado y no el dueño quien la adulteró. Tomamos del caso de Morales, supra:

"Roque confesó su delito. Morales negó la acusación y celebrado el juicio la corte lo declaró culpable y le impuso treinta y cinco dólares de multa. No conforme apeló.

"En su alegato señala la comisión de cuatro errores que envuelven la misma cuestión, a saber: la errónea declaración de su culpabilidad basada en haberse probado que tenía para la venta y vendía como pura y para el consumo humano leche de vaca adulterada.

"Que el acusado Morales era el dueño de un puesto dedicado a la venta de leche en Caguas el 11 de mayo de 1933, que el otro acusado Roque era empleado repartidor de la leche de Morales y que en un porrón de Morales se le ocupó en dicha fecha leche de vaca adulterada que 'vendía para el consumo público,' son hechos admitidos. *Y que en un caso de esta naturaleza pueden ser declarados culpables del delito tanto el dueño del puesto como su agente, es cuestión ya resuelta en sentido afirmativo por este tribunal."* (Itálicas nuestras.)

La salud pública requiere que la leche, el principal alimento de la humanidad, no sea adulterada. Generalmente, los traficantes en el artículo se valen de auxiliares que son los que están en contacto directo con ese producto. Por consiguiente, a fin de evitar la adulteración, es necesario impedir que ésta se realice ya directamente por el dueño del negocio o a través de sus agentes o empleados y la única forma de conseguir ese objeto es haciendo al dueño responsable en ambos casos, pues así no sólo se abstendrá él de adulterarla si que también tendrá buen cuidado de rodearse de auxiliares honrados incapaces de infringir la ley. De ahí que la ley sea tan drástica en estos casos.

*Por lo expuesto, procede confirmar la sentencia apelada.*