EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ARSENIO REYES y RAMÓN RIVERA, acusados y apelantes.

Núm. 8003.—*Sometido:* Abril 1, 1940. *Resuelto:* Abril 3, 1940.

*Reyes Delgado & Santos Borges,* abogados de los apelantes; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Arsenio Reyes y Ramón Rivera fueron sentenciados a pagar una multa de $25 y las costas, o en su defecto a sufrir un día de cárcel por cada dólar de multa que dejaren de satisfacer, por el delito de adulteración de leche, consistente, según la acusación, en que allá por el 16 de noviembre de 1938, en Jayuya, Puerto Rico, ilegal y voluntariamente transportaban y tenían para la venta, con el fin de dedicarla al consumo humano, leche de vaca adulterada con agua.

En el recurso de apelación que interpusieron para ante este tribunal alegan que la corte sentenciadora cometió error al no declarar con lugar su moción de absolución perentoria, al sentenciarlos sin haberse demostrado en el acto del juicio que la corte tenía jurisdicción, y que la sentencia es contraria a derecho y a la prueba.

Las cuestiones a resolver en este recurso son: (*a*) ¿Probó el fiscal el sitio donde tuvo lugar el acto delictivo?, y (*b*) ¿está la sentencia sostenida por la prueba?

Ninguno de los dos testigos que declararon en el juicio mencionó siquiera el sitio donde se realizaron los actos a que se referían en sus testimonios. Si ninguna otra prueba se hubiera presentado, tendríamos que convenir con los apelantes en que no se había probado la jurisdicción de la corte. Pero la prueba documental apreciada en relación con el testimonio del Inspector de Sanidad, Francisco Hernández Negrón, demuestra que el sitio donde se cometió el delito es el pueblo de Jayuya conforme se alega en la acusación.

De la declaración del Inspector Hernández Negrón aparece que las muestras de leche fueron tomadas a uno de los acusados en la oficina de aquél. Hasta ese momento no surge de la prueba el sitio donde los acusados transportaban y tenían para la venta la leche de vaca, aunque se infiere lógicamente que el sitio es el mismo donde el inspector tenía su oficina, pues no se concibe que dicho funcionario sorprendiese a los acusados transportando y ofreciendo en venta dicho artículo y que se trasladasen a un pueblo distinto para tomarle entonces la muestra. Demostrado que el sitio donde se tomó la muestra es el mismo donde prestaba servicios el Inspector de Sanidad, el *exhibit* núm. 1 del Pueblo nos suministra la necesaria información para determinar cuál era ese sitio. El *Exhibit* 1 del Pueblo dice así:

"—Gobierno de Puerto Rico—Departamento de Sanidad.—División de Abasto de Leche.—Núm. 3126.—San Juan, P. R., noviembre 22, 1938.—

"Sres. Arsenio Reyes y Ramón Rivera,—*P/c. del Inspector Francisco Hernández Negrón, Jayuya, Puerto Rico.*

"Señor: La muestra de leche de vaca Núm. P.H.N. 492 resultó adulterada. Si Ud. ha analizado la muestra duplicada que le entregó el Inspector, y existe disparidad entre sus datos analíticos y los nuestros, sírvase comunicarlo al Comisionado inmediatamente, para analizar la muestra triplicada en presencia de los peritos de ambas partes, si Ud. así lo desea.—Se le advierte que debe ejercer

este derecho con toda diligencia, porque transcurridos quince días (desde la fecha que tomó la muestra el Inspector) la composición de la leche tiende a variar y sus análisis entonces no le presta utilidad alguna.—Atentamente, Por orden del Comisionado—Por el Jefe del Negociado (Fdo.) Dr. F. García de la Torre, Inspector Médico General.—2396.

—Nov. 24/38—8:00 A.M., Ramón Rivera (su marca)

Testigo marca (Fdo.) Alino Rivera.

—Nov. 24/38—12:45 P.M. (Fdo.) Arsenio Reyes.—

Notificado por F. Hernández Negrón.''

El delito, de acuerdo con la acusación y con la prueba (T. de E., pág. 1), se cometió el 16 de noviembre de 1938 y conforme resulta del *exhibit* 1 del Pueblo, el 22 del mismo mes el Inspector Hernández Negrón prestaba servicios en Jayuya y en Jayuya también residían los acusados, pues no es lógico suponer que existiendo en cada población un inspector de sanidad, tal comunicación se dirija a los acusados por conducto de un inspector residente en una población distinta de aquélla en que ellos residen. Refiriéndose a la notificación del resultado del análisis, declaró el Inspector Hernández Negrón:

''P. ¿Después notificó a alguno, a alguna persona sobre el resultado del examen?—Cuando vino el resultado del examen mandé razón a Arsenio Reyes y vino al pueblo y también a Ramón Rivera y Ramón Rivera marcó con una cruz en el papel, la notificación, cuando le dije lo que significaba, le leí y le dije que aquella muestra había salido con agua y avisé a Arsenio Reyes y estuvo en el pueblo, en casa y en casa le notifiqué eso.

''P. Mire a ver si ésta es la notificación.—Ésta misma es.

''P. ¿Son las personas esas?—Firmaron delante de mí.'' (T. de E., págs. 2–3.)

Consideradas las circunstancias concomitantes, fuerza es concluir que la evidencia suficientemente demuestra que el sitio donde se cometió el delito es el mismo que se expone en la acusación, no siendo imprescindible que ese hecho se pruebe por evidencia directa. A ese efecto dijimos en el caso del *Pueblo* v. *Andino,* 55 D.P.R. 71, 75:

"Es regla bien establecida que el sitio donde se cometió el delito puede establecerse por evidencia circunstancial. Abbot's Criminal Trial Brief, tercera edición, pág. 1020, y casos citados.

"La cuestión no es nueva en esta jurisdicción. En el caso de *El Pueblo* v. *Llabrés,* 29 D.P.R. 749, en que la evidencia sólo demostraba que el delito se había cometido en el Banco Colonial Americano, sin que apareciera dónde estaba establecido el mismo, esta Corte sostuvo la jurisdicción de la Corte de Distrito de San Juan. Tomamos del *syllabus:*

" 'La jurisdicción no es necesario demostrarla con prueba directa y positiva. Será bastante con que pueda razonablemente inferirse de los hechos y circunstancias que se hayan probado y estén envueltos en la transacción criminal, o que pueda inferirse de las circunstancias que el delito fué cometido en el sitio alegado.'

"Véase además Underhill on Criminal Evidence, cuarta edición, sección 96, pág. 116, citado con aprobación en el caso de *Pueblo* v. *Llabrés,* supra."

■■ Considerando ahora la segunda de las cuestiones planteadas, la declaración del Inspector Hernández Negrón, corroborada por la del testigo Avino Rivera, prueba los elementos constitutivos del delito. De uno y otro testimonio resulta que el 16 de noviembre de 1938 dicho Inspector de Sanidad encontró a Ramón Rivera conduciendo un porrón con capacidad de ocho litros de leche y le requirió que fuese a su oficina para tomarle una muestra. En el balcón de la oficina vació el contenido, que era un litro, y tomó las muestras según el procedimiento prescrito en los reglamentos de Sanidad. Arsenio Reyes no estuvo presente, pero el porrón, aunque no estaba precintado, tenía una inscripción en rojo que decía: "Ordeñadero de Arsenio Reyes." El 24 de noviembre de 1938, Arsenio Reyes, que según la prueba era dueño de una vaquería, firmó sin protesta alguna el recibo de la notificación, sin que de los autos resulte que se hubiera controvertido en forma alguna la evidencia del fiscal. Parece pertinente repetir aquí lo dicho en el caso del *Pueblo* v. *Acosta Padilla,* ante, pág. 138:

"La corte inferior interpretó la ley correctamente. El delito que define la Ley de 12 de agosto de 1925 queda consumado al trans-

portar, tener y ofrecer en venta, con el fin de dedicarla al consumo humano, leche adulterada. La realización de una venta no es un elemento esencial del delito. Basta que el acusado transporte la leche adulterada y que la ofrezca en venta para ser consumida por seres humanos. Siendo esto así, no erró la corte al advertir a la defensa que el Fiscal no estaba obligado a probar la consumación de una venta.''

Véanse además los casos de *Pueblo* v. *Morales*, 47 D.P.R. 762, y *Pueblo* v. *Rubio*, 53 D.P.R. 562, citados por el fiscal.

*Resueltas así las cuestiones planteadas y no apareciendo de los autos que se haya cometido error alguno, procede desestimar el recurso y confirmar la sentencia apelada.*

El Juez Asociado Sr. Travieso no intervino.