El Pueblo de Puerto Rico, demandante y apelado, *v.* Juan Román y Gertrudis López, acusados y apelantes.

Núm. 9504.—*Sometido:* Junio 25, 1942. *Resuelto:* Junio 26, 1942.

*Alfonso Lastra Chárriez,* abogado de los apelantes; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Juan Román y Gertrudis López fuéron acusados y declarados culpables de un delito de adulteración de leche.

Juan Ramos Rivera, inspector de Sanidad, declaró que conocía a los acusados, teniendo el primero en Río Piedras para el 13 de noviembre de 1941, un puesto de leche, siendo el segundo el dependiente del puesto; que como a las seis y media de la mañana de ese día se estaba preparando la nevera del puesto para meter una leche, de la que sacó una muestra, resultando adulterada. El puesto era público y estaba abierto, presumiéndose que la leche era para la venta pública. Cuando llegó al puesto, partía la guagua que había dejado la leche.

Gabriel A. Menéndez confirmó la declaración de Ramos Rivera, concretando que las muestras se tomaron de un purrón que había en la nevera y agregando que los dos acusados se dedicaban a vender leche en el puesto.

En su defensa declararon los acusados. Román, el dueño del puesto, no disputó que se hubiera tomado la muestra de leche y que resultara adulterada. La explicación que da es que no vendió leche alguna de aquella de la cual se tomó la muestra porque "había dado orden que tan pronto tomaran muestras que no me vendiera leche porque yo tenía dudas de esa leche."

El otro acusado, el dependiente, confirma lo dicho por el dueño.

Se le pidió a la corte que reconsiderara su sentencia y se negó a ello, así:

"La declaración de Gertrudis López demostró que ambos acusados tenían en venta leche que resultó adulterada. Las instrucciones que recibió López de Román eran de vender la leche a menos que algún inspector de Sanidad tomara una muestra. Es cierto que no se vendió la leche, y que no hay prueba de que se llegara a ofrecer a algún comprador. Pero sí se demostró que la leche se tenía en venta, y esto lo castiga el estatuto. En el caso de *Pueblo* v. *Andino*,

21 D.P.R. 225, no aparece que hubiese prueba de que la leche se tenía en venta, y por esa razón no es aplicable el caso.''

Se apeló y se invoca el caso de *Pueblo* v. *Andino*, 21 D.P. R. 225, para pedir la revocación de la sentencia.

No tienen razón los apelantes. Este caso se diferencia del de *Andino*. Aquí la leche fué recibida y aceptada, colocándose en la nevera para venderla para el consumo humano. Estaba adulterada y de no ser por la llegada del inspector, se hubiera vendido. La ley castiga la venta, ofrecimiento de venta o tenencia para la venta de leche adulterada.

Es regla establecida que una leche que se encuentra en un puesto se presume que está para la venta. *Pueblo* v. *Pérez*, 23 D.P.R. 877. Siendo el deber de los vendedores de leche cerciorarse de que no venden leche adulterada. *Pueblo* v. *Cartagena*, 37 D.P.R. 457.

Aquí el dueño del puesto no cumplía con ese deber. La orden que diera en vez de ayudarlo en su defensa, revela un sistema contrario a lo resuelto en *Pueblo* v. *Cartagena*, supra.

*Debe declararse sin lugar el recurso y confirmarse la sentencia.*

El Juez Asociado Sr. Travieso no intervino.