El Pueblo de Puerto Rico, demandante y apelado, *v.* José Solla Valle, acusado y apelante.

Núm. 11737.—*Sometido:* Febrero 12, 1947. *Resuelto:* Febrero 24, 1947.

*Benjamín Ortiz y Alvaro Ortiz,* abogados del apelante; *Hon. Procurador General Interino Luis Negrón Fernández y J. Correa Suárez, Fiscal Auxiliar del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

El acusado fué convicto de un delito de adulteración de leche, en grado subsiguiente, y sentenciado a seis meses de cárcel y $500 de multa. En apelación alega en primer término que la sentencia no está sostenida por la prueba.

El abogado del apelante admitió durante el juicio que el acusado había sido convicto anteriormente de un delito simi-

lar y que la leche ocupádale en este caso estaba adulterada. Manifestó que las únicas cuestiones en controversia eran si el acusado había adulterado la leche y si ésta le pertenecía.

Un inspector del Departamento de Salud declaró que el día 28 de marzo de 1946, a las tres de la tarde, se personó en el establecimiento del acusado encontrando un litro de leche en la nevera y tomó una muestra de la misma. La botella estaba destapada. Era la única que estaba en la nevera. La botella estaba parada dentro del agua hasta dos pulgadas de la parte de arriba. La nevera era una nevera tanque que se usa para enfriar botellas y le echan agua. El inspector también declaró que el acusado le dijo que la leche pertenecía a un amigo que la había dejado allí. Se presentó en evidencia una certificación al efecto de que la leche estaba adulterada con un 32 por ciento de agua añadídale artificialmente.

Fernando Jiménez declaró como testigo de la defensa que había traído la referida botella de leche desde su casa en Pueblo Viejo donde tenía dos vacas, para llevársela a un hermano suyo en "Ocean Park"; que dejó la botella, destapada, en la nevera del acusado con el fin de hacer una diligencia urgente; que cuando regresó luego por la leche, el acusado le dijo lo que había pasado; que tanto él como el acusado fueron entonces al Departamento de Salud y le contaron lo sucedido al Dr. Del Valle Sárraga; y que firmó una declaración jurada al mismo efecto que le fué entregada al fiscal por el abogado del acusado. La declaración de un empleado de Jiménez y la del acusado corroboraron la narración de Jiménez.

El acusado también declaró que puso esta botella destapada llena de leche en una pequeña nevera tanque que usaba para coca colas y refrescos; que esta nevera enfriaba el agua y que cuando se levantaba una botella ésta escurría agua; y que guardaba la leche pasterizada que vendía en otra nevera grande.

Arguye el acusado en sustancia que la corte de distrito, después de pesar esta prueba y en vista de las circunstancias

concurrentes, debió haberlo absuelto. La dificultad estriba en que es obvio que la corte de distrito no dió crédito a la declaración de que la leche pertenecía a Jiménez y que éste la había dejado allí para que se la guardaran. Por el contrario, aparentemente llegó a la conclusión de que el acusado, quien tenía una licencia para vender leche y quien había sido convicto anteriormente por un delito similar, inventó este cuento con la ayuda de Jiménez y como cuestión de hecho tenía en su poder dicha leche bajo circunstancias que constituían una infracción a la sección 1 de la Ley núm. 77, Leyes de Puerto Rico, 1925 (pág. 559). No encontramos base para resolver que la corte inferior no tenía derecho a llegar a esta última conclusión.

Hemos resuelto que "leche que se encuentra en un puesto se presume que está para la venta. *Pueblo* v. *Pérez,* 23 D.P.R. 877. Siendo el deber de los vendedores de leche cerciorarse de que no venden leche adulterada. *Pueblo* v. *Cartagena,* 37 D.P.R. 457", *Pueblo* v. *Román,* 60 D.P.R. 637, 639. De conformidad con nuestra ley por tanto no es defensa que "los acusados el día en que se tomó la muestra ni habían adulterado la leche ni sabían que estaba adulterada. . .". *Pueblo* v. *González,* 63 D.P.R. 144, 146.

■ Alega el acusado que estos casos son erróneos por el fundamento de que es inconstitucional el exigir que un vendedor sea responsable sin prueba de que o bien había adulterado la leche o sabía que ésta estaba adulterada. No podemos convenir. Esta Ley tiene por miras velar por la salud de la comunidad. La Legislatura puede disponer si así lo desea—y hemos resuelto que así lo ha hecho—que los vendedores que ofrecieren o tuvieren en venta la leche lo hacen a su propio riesgo: si el análisis demuestra que esa leche está adulterada, se les exige responsabilidad criminal independientemente de su participación en la adulteración o su conocimiento personal de la misma. El caso de *Tot* v. *United States,* 319 U.S. 463, citado por el acusado, envolvía un problema enteramente diferente y no es de aplicación aquí.

■ Seguidamente se queja el acusado de la actuación de la corte de distrito al negarse a eliminar la declaración del inspector de que había visto la licencia para vender leche en el establecimiento del acusado. Suponiendo que esta actuación de la corte de distrito fué en violación de la regla de mejor evidencia contenida en el artículo 386 del Código de Enjuiciamiento Civil, el error, de alguno existir, fué subsanado por la declaración del acusado al efecto de que vendía leche en su establecimiento y de que tenía una licencia para ello.

■ En su último señalamiento de error alega el acusado que la corte de distrito cometió error perjudicial al negarse a reabrir el caso, después de haber declarado culpable al acusado y de haberle dictado la sentencia, con el fin de permitirle al acusado traer la declaración del Dr. Del Valle Sárraga para corroborar la prueba de la defensa. Esta es una contención frívola. Aparte del hecho de que es bastante dudosa la admisibilidad de la declaración del Dr. Del Valle en cuanto a lo que le dijeran el acusado y Jiménez, no podemos decir que la corte de distrito abusó de su discreción al negarse a reabrir el caso, después de sentencia, para oír la declaración de un testigo que estaba disponible al acusado con anterioridad a la terminación del juicio.

Tampoco estamos conformes en que el juez de distrito ''cometió error al anticipar su juicio sobre tal testimonio y al decir prácticamente que él no le daría crédito al testimonio del Dr. Del Valle Sárraga.'' Lo que la corte de hecho dijo, en respuesta a la moción para que se oyera al Dr. Del Valle, fué que ''La corte ha oído eso; pero la corte no puede entender que una persona, después de una sentencia de adulteración de leche, sea tan cándida que venga un amigo y le acepte dejarle leche allí.'' Por tanto la corte de distrito no decía que no le daría crédito a la declaración del Dr. Del Valle. En sustancia decía que indudablemente el Dr. Del Valle declararía que el acusado y Jiménez le habían contado su historia; pero que la corte ya había llegado a la conclusión que

esa misma historia, oída bajo juramento de labios de Jiménez y del acusado, era falsa, y que en su consecuencia sería inútil oír la declaración del Dr. Del Valle de que ellos también le habían hecho esta historia falsa.

*La sentencia de la corte de distrito será confirmada.*