EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GERARDO DE JESÚS VÉLEZ, acusado y apelante.

Núm. 13526.—*Sometido:* Enero 21, 1949. *Resuelto:* Mayo 26, 1949.

*José Rafael Gelpí,* abogado del apelante; *Hon. Procurador General Vicente Géigel Polanco y J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del tribunal.

El apelante fué sentenciado a seis meses de cárcel por infracción a la Ley Para Declarar Estorbo Público los Juegos Conocidos Generalmente como "Bolita", "Boli-pool", etc., aprobada el 15 de mayo de 1948 ((1) pág. 739). Se imputó al acusado que el 16 de junio de 1948, en la ciudad de Mayagüez y en ocasión que le fuera registrada su casa residencia mediante la correspondiente orden de allanamiento, tenía en su poder cincuenta *tickets* a boletos de boli-pool y además listas de números y letras, los cuales se usan y pueden

utilizarse para los juegos ilegales de la bolita, boli-pool, combinaciones relacionadas con los pools y bancas de los hipódromos de Puerto Rico y loterías clandestinas.

En apoyo de este recurso, el apelante levanta tres cuestiones, a saber: (*a*) falta de jurisdicción; (*b*) error en la admisión de cierta evidencia; y (*c*) que la sección 4 de la ley antes mencionada es inconstitucional.

## I

La alegada falta de jurisdicción consiste en que no se probó el sitio donde se cometió el delito. En efecto, el único testigo que declaró en este caso, en ningún momento mencionó dónde radica la casa que fué registrada por él a virtud de la orden de allanamiento. No se dijo a qué corte correspondía el juez que la expidió, pero se declaró que el 16 de junio de 1948 y mediante orden expedida al efecto por el Juez de la Corte Municipal, Víctor Brignoni, el testigo procedió a allanar la casa residencia de Gerardo De Jesús Vélez. El Juez de la Corte de Distrito de Mayagüez podía tomar conocimiento judicial de que en la fecha indicada Víctor Brignoni era Juez Municipal de Mayagüez. Y como de conformidad con la sección 2 de la referida Ley núm. 220, un juez municipal no tiene jurisdicción para expedir órdenes de allanamiento que han de cumplimentarse fuera de su jurisdicción; y de acuerdo con el artículo 464 del Código de Enjuiciamiento Civil, se presume que los deberes de un cargo han sido cumplidos con regularidad, la corte inferior correctamente presumió que la residencia allanada a virtud de orden expedida por el Juez Municipal de Mayagüez radica dentro del Distrito Judicial Municipal de Mayagüez y consecuentemente, dentro de la jurisdicción de la corte a quo. Habiéndose ocupado en la residencia allanada los efectos cuya posesión es constitutiva del delito imputado, de esa manera indirecta quedó probado que el acto delictivo fué cometido dentro del Distrito Judicial de Mayagüez. No era necesario

probar la jurisdicción por evidencia directa. *Pueblo* v. *Reyes,* 56 D.P.R. 462; *Pueblo* v. *Andino,* 55 D.P.R. 71; *Underhill Criminal Evidence,* 4ta. ed., sec. 96, pág. 116.

## II

La segunda cuestión, según la formula el apelante, consiste en que la corte, a pesar de su oposición, permitió que un testigo declarase sobre la reputación del acusado y sobre condenas impuéstasle por delitos menos graves. No es exacto el apelante al formular la cuestión. Lo sucedido, conforme aparece del récord, fué lo siguiente:

"LA DEFENSA: Dígame, Merle, con la venia del Tribunal, usted no tiene seguridad de que esto se estuviese usando ese día? Cuando digo 'esto' me refiero a la acción a favor del Asilo de Pobres. R.—Se puede utilizar. P.—¿Y esto se puede utilizar? ¿Y en ese momento se estaba utilizando, ese día? R.—Se está utilizando porque el señor Gerardo De Jesús Vélez es conocido y reputado en Mayagüez. . . . P.—Yo solicito que no declare sobre la reputación . . . R.—Él tiene sentencias; sí, señor, ha sido sentenciado en Mayagüez anterior a esta ley. LA DEFENSA: Solicito la eliminación. SR. FISCAL: Está contestando a preguntas del compañero. LA CORTE: Sin lugar. LA DEFENSA: Para tomar una excepción de la resolución del Tribunal por el fundamento de que no se puede traer a colación sentencia de delito menos grave de bolipool contra el acusado; por el fundamento adicional de que desde el principio el abogado hizo oposición e insistió el testigo en querer declarar en la consideración de los hechos . . . LA CORTE: La corte admite la pregunta y no sostiene la objeción porque la contestación es a manera de *mejor identificación del acusado.*" (Bastardillas nuestras.)

Si el juicio hubiera sido por jurado, una oportuna instrucción de la corte para que no se tomara en cuenta aquella evidencia, hubiera subsanado el error. A *fortiori,* tratándose de un juicio por Tribunal de Derecho, más insubstancial resulta la contención del apelante. La evidencia de que éste se queja fué introducida contestando una pregunta de la defensa. No fué que el fiscal tratase de probar la reputación del acusado, ni así lo entendió la corte, pues al dene-

gar la objeción expresó su intención de aceptar la prueba, no como evidencia de reputación, sino para identificar al acusado. Técnicamente erró la corte al no ordenar su eliminación, pero como ningún perjuicio ocasionó al acusado, ese error no causa revocación.

### III

La sección 4 que se alega infringida y cuya constitucionalidad impugna el apelante, en lo pertinente, dice así:

"Sección 4.—Toda persona que fuere sorprendida portando o conduciendo o que tuviere en su poder en cualquier concepto, cualquier papeleta, billete, *ticket*, libreta, lista de números o letras, boletos o implementos *que pudieren usarse* para los juegos ilegales de la 'Bolita', 'Boli-pool', combinaciones relacionadas con los 'Pools', o bancas de los hipódromos de Puerto Rico y loterías clandestinas, y toda persona que poseyere, vendiere o en cualquier forma transportare éstos o *cualesquiera otros análogos* que se pudieren utilizar o usar en dichos juegos ilícitos, *o conectados con la práctica de los mismos,* incurrirá en delito público . . .". (Bastardillas nuestras.)

El apelante no cita autoridad alguna en apoyo de la alegada inconstitucionalidad de la ley. Arguye, sin embargo, que esa sección es irrazonable y que la misma afecta el derecho de propiedad y la libertad del individuo. En apoyo de su tesis dice que el que portare, condujere o tuviese en su poder cualquier papel, libreta, boleto, etc., incurre en delito de acuerdo con dicha sección, toda vez que esos artículos pueden utilizarse para el juego de la bolita; que bastará agregar a un papel en blanco que se porte, un número de tres cifras, y el delito quedará consumado; y que también se cometerá el delito al portar un papel en blanco, pues puede usarse en el futuro para llenarlo de guarismos que se usen para el juego de la bolita. En otras palabras, la contención del acusado parece ser que la sección 4 define vaga e imprecisamente el delito y que por consiguiente, es inconstitucional.

La ley que nos ocupa, en su sección primera, empieza por declarar estorbo público a los juegos generalmente conoci-

dos por bolita o boli-pool y es de conocimiento general los esfuerzos que por muchos años se han venido haciendo para erradicar este mal social que tantos perjuicios causa, especialmente en la clase pobre que es la que por lo general participa en ese juego. Para lograr su fin, la Legislatura ha tratado de atacar el mal en la forma más eficiente posible. No convenía usar un lenguaje demasiado específico. Difícil en extremo, si no imposible, hubiera sido para el legislador prever todas las ingeniosas combinaciones y artificios de que los infractores de la ley podrían valerse para burlarla.

La regla de que los estatutos penales deben ser estrictamente interpretados a favor de las personas acusadas de infringirlos, no requiere que a las palabras de una ley se les dé su significado más restringido ni que la intención evidente del legislador sea menospreciada. Para interpretar correctamente una ley, debe buscarse la intención legislativa, no en una frase aislada o en una de sus secciones, sino en el contexto de todo el estatuto, teniendo en cuenta el propósito perseguido por el legislador. *Donnelley* v. *United States*, 276 U. S. 505 (1928) y *United States* v. *Giles*, 300 U. S. 41 (1937).

La interpretación propuesta por el apelante, al efecto de que por el mero hecho de portarse un papel o una libreta en blanco, se viola la sección 4, es irrazonable. Ninguna corte de justicia podría interpretar el estatuto en ese sentido.

Si nos atenemos a la letra de la sección 4, recibiremos la impresión de que el mero hecho de portar, conducir, usar o poseer cualquier implemento *que pudiere usarse* para los juegos ilegales de la bolita, boli-pool, etc., es constitutivo de infracción a la ley. La intención del legislador al emplear la frase "que pudieren usarse" no pudo ser declarar delito el mero hecho de portar, usar, conducir o poseer objetos susceptibles de uso inocente. Su intención fué prohibir el por-

tar, usar, conducir o poseer tales objetos cuando se hayan utilizado o se estén utilizando en relación con los juegos prohibidos por el estatuto.

En nuestra opinión la ley no adolece del defecto de vaguedad o imprecisión.[1]  *Procede la confirmación de la sentencia.*

El Juez Asociado Sr. Negrón Fernández no intervino.

---

[1] En relación con esta materia véanse *United States* v. *Petrillo,* 332 U. S. 1 (1947); Ralph W. Aigler, *Legislation in Vague or General Terms,* 21 Mich. Law Rev. 831 y 62 Harv. Law Rev. 77.