EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PLÁCIDA MANTILLA RODRÍGUEZ, conocida por PLÁCIDA ROSA MACHADO, acusada y apelante.

Núm. 14275.—*Sometido:* Febrero 2, 1950. *Resuelto:* Marzo 17, 1950.

---

*Luis A. Archilla Laugier* y *José E. Bosch Roqué,* abogados de la apelante; *Hon. Procurador General Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Fernando Fornaris, Jr., Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

La apelante fué acusada de infringir la sección 4 de la Ley núm. 220, Leyes de Puerto Rico, 1948 ((1) pág. 739), conocida como la Ley de la Bolita. Fué convicta y sentenciada a cumplir seis meses de cárcel. Apeló de la sentencia y señala cinco errores.

## I

██ El primer error señalado es que la sección 4 es inconstitucional. Según la acusada, dicha sección provee que será delito para toda persona tener en su poder cualquier papel, papeleta, lápiz, un rollo de papel de máquina de sumar, etc., que posiblemente pudieran usarse en un juego de bolita; que bajo la sección 4 El Pueblo no viene obligado a demostrar que los anteriores implementos, que son susceptibles de uso inocente, estaban siendo de hecho usados o se iban a usar en el juego de bolita; y en consecuencia que la sección 4 es tan vaga e indefinida que viola la cláusula del debido procedimiento de ley de la Carta Orgánica, 48 U.S.C., sec. 737.(1)

---

(1) La sección 4 de la Ley núm. 220 lee en parte como sigue: "Toda persona que fuere sorprendida portando o conduciendo o que tuviere en su poder en cualquier concepto cualquier papeleta, billete, *ticket*, libreta, lista de números o letras, boletos o implementos que pudieren usarse para los juegos ilegales de la 'Bolita', 'Boli–pool', combinaciones relacionadas con los 'Pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas, y toda persona que poseyere, vendiere, o en cualquier forma transportare éstos o cualesquiera otros análogos que se pudieren utilizar o usar en dichos juegos ilícitos, *o* conectados con la práctica de los mismos, incurrirá en delito público . . ." ("o" en bastardilla nuestra).

Es doctrina conocida que la cláusula del debido procedimiento exige que el estatuto sea claro y preciso. "La norma de certeza para los estatutos que castigan delitos es mayor que la exigida para los estatutos que dependen primordialmente de sanciones civiles para hacerlos valer. El delito 'debe definirse con adecuada precisión'. *Cantwell* v. *Connecticut*, 310 U. S. 296; *Pierce* v. *United States*, 314 U. S. 306, 311. Debe haber una norma determinable de culpabilidad. Las personas de inteligencia común y corriente no deben estar obligadas a adivinar en cuanto al significado del estatuto. La vaguedad puede consistir de incertidumbre en cuanto a qué personas cubre la ley, *Lanzetta* v. *New Jersey*, 306 U. S. 451, o incertidumbre en cuanto a la norma aplicable para determinar la culpabilidad." *Winters* v. *New York*, 333 U. S. 507, 515–16. (²)

Si la sección 4 significara lo que la acusada dice que significa, aquélla se desviaría de la cláusula del debido procedimiento porque no establecería una norma clara y precisa para determinar la culpabilidad. Así interpretada, dicha sección sería tan amplia en su alcance, tan indefinida y vaga que tanto (1) la posesión inocente de materiales intrínsecamente inocentes como lápices y papeletas con números corrientes escritos en ellas, como (2) la posesión reprensible de los mismos materiales en relación con un juego ilegal de la bolita, serían igualmente penables. Pero "No es permisible aprobar una ley que en efecto tienda una red para que todo el mundo caiga en ella, en la posibilidad de que, si bien los inocentes seguramente caerán en sus tejidos, también algún delincuente caiga en igual forma." *Fairmont Co.* v. *Minnesota*, 274 U. S. 1, 10. El permitir que subsista tal

---

(²) *United States* v. *Petrillo*, 332 U. S. 1; *Cole* v. *Arkansas*, 338 U. S. 345, 354; *Gorin* v. *United States*, 312 U. S. 19; *Champlin Rfg. Co.* v. *Commission*, 286 U. S. 210; *Connally* v. *General Const. Co.*, 269 U. S. 385; *United States* v. *Cohen Grocery Co.*, 255 U.S. 81.

Véanse Rottschaefer *on Constitutional Law*, págs. 765–67; 62 Harv. L. Rev. 77; 22 So. Calif. L. Rev. 298; 96 U. of Pa. L. Rev. 889; 33 U. of Va. L. Rev. 203; 35 Calif. L. Rev. 594; 29 Calif. L. Rev. 548; 45 Harv. L. Rev. 160.

estatuto sería infringir el mandato del caso de *Winters* al efecto de que (pág. 520) "Cuando un estatuto es tan vago que declara penable un acto inocente, no puede sostenerse una convicción bajo el mismo. *Herndon* v. *Lowry*, 301 U. S. 242, 259."

La proposición de que la sección 4 condena la posesión de objetos inocentes y es por consiguiente inconstitucionalmente vaga no es nueva. Se presentó en *Pueblo* v. *De Jesús*, 70 D.P.R. 37, en el cual se resolvió por este Tribunal con el siguiente lenguaje (págs. 42–43):

"La interpretación propuesta por el apelante, al efecto de que por el mero hecho de portarse un papel o una libreta en blanco, se viola la sección 4, es irrazonable. Ninguna corte de justicia podría interpretar el estatuto en ese sentido.

"Si nos atenemos a la letra de la sección 4, recibiremos la impresión de que el mero hecho de portar, conducir, usar o poseer cualquier implemento *que pudiere usarse* para los juegos ilegales de la bolita, boli-pool, etc., es constitutivo de infracción a la ley. La intención del legislador al emplear la frase 'que pudieren usarse' no pudo ser declarar delito el mero hecho de portar, usar, conducir o poseer objetos susceptibles de uso inocente. Su intención fué prohibir el portar, usar, conducir o poseer tales objetos cuando se hayan utilizado o se estén utilizando en relación con los juegos prohibidos por el estatuto."

No obstante la acusada sostiene que el caso de *De Jesús* fué erróneamente resuelto y debe ser revocado. Su posición es que el lenguaje de la sección 4 es claro y libre de toda ambigüedad y que este Tribunal no puede redactarla de nuevo se pretexto de interpretarla para salvar su constitucionalidad. Así hacerlo, alega, sería invadir nosotros las prerrogativas de la Legislatura y violar la doctrina de la separación de poderes.

Sin embargo, no convenimos en que la sección 4 escuetamente provee de su faz que la mera posesión de objetos que son susceptibles de uso inocente constituye delito. Según indicamos en el caso de *De Jesús*, ésta puede ser la primera impresión obtenida de una ligera lectura de la sección 4, independientemente de las otras disposiciones de la Ley núm.

220. Pero creemos que la intención de la Legislatura de darle un significado diferente con este lenguaje, se torna manifiesta cuando examinamos la sección 4 cuidadosamente a la luz de varias reglas de interpretación estatutaria.

■ *Primera*—Una sección de un estatuto no se lee aisladamente sino junta con las otras secciones de la Ley con el fin de determinar su verdadero significado y propósito. *United States* v. *Alpers*, 338 U. S. 680; *Roig* v. *Tribl. de Contribuciones*, 65 D.P.R. 445, 448, y casos citados.

La sección 4 de la Ley núm. 220 no rige por sí sola. Constituye una sola disposición de un estatuto abarcador que tiene por miras erradicar un mal, muy serio por cierto, que azota esta comunidad. En las otras secciones de esta ley ciertos actos, fuera de la merá posesión de los objetos, se declaran infracciones de dichas secciones. Se admite que la conducta que se declara penable mediante estas otras secciones, debe demostrarse conectada con un juego de bolita. En verdad, la acusada sostiene que estas disposiciones en las otras secciones demuestran que la Legislatura deliberadamente omitió el requisito de tal conexión de la sección 4. Pero inferimos una conclusión diferente del hecho de que estas otras secciones de la Ley núm. 220 prohiben solamente conducta o actuaciones que estén conectadas con un juego de bolita. Creemos que la Legislatura no tuvo por miras, en la sección 4, desviarse de la pauta general de la Ley. Por tanto, interpretamos la sección 4 como que provee, lo mismo que las otras secciones, que debe demostrarse tal conexión.

■■ *Segunda*—La conjunción "o" puede leerse como la conjunción "y" en un estatuto, si con esto se logra hacer cumplir la intención legislativa. Ésta es una sabia regla de interpretación estatutaria porque "Ha habido . . . tanta laxitud en el uso de estas dos conjunciones que las cortes generalmente han dicho que las mismas son intercambiables y que la una puede sustituir a la otra, siempre que al así hacerlo se cumpla con la intención legislativa." 2 Sutherland, *Statutory Construction*, 3ra. ed., sec. 4923, pág. 451, y

casos citados; casos citados en 50 Am. Jur. sec. 282, págs. 267–8; véase *Pueblo* v. *Henneman*, 69 D.P.R. 995.

Creemos que esta regla es aplicable a este caso leyendo la conjunción en bastardillas "o" de la sección 4, citada en la nota 1, como "y". Así leída, se torna claro que si la imputación de posesión envuelve materiales susceptibles de uso inocente, no se puede obtener una convicción bajo la sección 4 a menos que se pruebe que los materiales estaban conectados con el manejo efectivo de un juego de bolita. (³)

La apelante arguye que en este caso no estamos autorizados a leer "o" como "y", toda vez que la sección 4 es clara de su faz. Desde luego, no hay una contestación automática a la pregunta de cuándo es permisible la sustitución de "o" por "y". Hay que recurrir siempre a la intención legislativa. Pero según indicamos a través de toda esta opinión, creemos que fué la intención de la Legislatura exigir que se probara la conexión con un juego de bolita cuando el delito imputado era posesión de materiales que son susceptibles de uso inocente. Bajo tales circunstancias, los casos permiten la sustitución de "o" por "y". (⁴)

*Tercera*—Aun a un estatuto criminal "debe dársele una interpretación razonable; y una aplicación literal del mismo, que resulta en consecuencias absurdas, debe ser evi-

---

(³) Al decir en el caso de *De Jesús* que la Legislatura tuvo por miras prohibir la posesión de implementos cuando éstos "se hayan utilizado o se estén utilizando en relación con los juegos prohibidos [bolita]", no le inyectamos, según alega la apelante, la frase a la sección 4. Lo que en efecto hicimos—y ahora lo hacemos expresamente—fué leer la conjunción "y" por la conjunción en bastardillas "o".

(⁴) Las cortes se han negado también a sentirse constreñidas por el lenguaje aparentemente literal de un estatuto en otras ocasiones en que había margen para interpretación y en donde la aplicación literal frustraría la manifiesta intención del Congreso. *United States* v. *Alpers*, supra; *Quiñones* v. *United States*, 161 F.2d 79 (C.C.A. 1, 1947); *Rullán* v. *Buscaglia*, 168 F.2d 401 (C.C.A. 1, 1948), *cert.* denegado, 335 U. S. 857; *Parrondo* v. *L. Rodríguez & Co.*, 64 D.P.R. 438; *Tugwell, Gobernador* v. *Corte*, 64 D.P.R. 220; *Ballester* v. *Tribunal de Apelación*, 61 D.P.R. 474, 492–3; *Ballester* v. *Tribl. de Apelación*, 60 D.P.R. 768, 779; *Compañía Popular* v. *Unión de Empleados*, 69 D.P.R. 179, 190, nota 2; *Pueblo* v. *Tirado*, 69 D.P.R. 389; *Sucn. Giusti* v. *Tribl. Contribuciones*, 70 D.P.R. 117, 136, nota 9.

44

tada siempre que se pueda dar a la ley una aplicación razonable, consistente con el propósito legislativo." (⁵) Al aplicarle esta regla al presente caso, no podemos creer que fué la intención de la Legislatura declarar actos criminales aquellos actos que son inocentes *per se;* es decir, que será delito bajo la sección 4 el poseer materiales enteramente inocuos, tales como lápices y papel de máquinas de sumar, sin que se pruebe que están relacionados o conectados con un juego de la bolita. Tan dudosa interpretación de un estatuto criminal no debe llevarse a cabo, a no ser que el lenguaje del estatuto obligue a ello. Y no estamos preparados para decir que el lenguaje de la sección 4 obligue este resultado irrazonable y absurdo. Más bien estamos convencidos de que la Legislatura tuvo por miras proveer que la posesión de tales objetos susceptibles de uso inocente será penable solamente si los objetos están conectados con un juego ilegal de bolita.

*Cuarta*—"La regla, enunciada a menudo, de que los estatutos penales deben interpretarse restrictivamente, no exige que a las palabras de un estatuto deba dárseles su significado más limitado o que deba hacerse caso omiso de la evidente intención del legislador." *United States* v. *Giles,* 300 U. S. 41, 48; *Singer* v. *United States,* 323 U. S. 338, 341–2; *United States* v. *Alpers,* supra. (⁶)

---

(⁵) *United States* v. *Katz,* 271 U. S. 354, 357; *Adams* v. *New York,* 192 U. S. 585, 599. Véanse también *U. S.* v. *Amer. Trucking Ass'ns.,* 310 U. S. 534, 543; *Armstrong Co.* v. *Nu–Enamel Corp.,* 305 U. S. 315, 332–3; *Sorrells* v. *United States,* 287 U. S. 435, 446; *Singer* v. *United States,* 323 U. S. 338; *United States* v. *Giles,* 300 U. S. 41; *Haggar Co.* v. *Helvering,* 308 U. S. 389, 394; *Helvering* v. *Hammel,* 311 U. S. 504, 510–11; *Lau Ow Bew* v. *United States,* 144 U. S. 47, 59.

(⁶) En su más reciente reexposición de esta regla en el caso de *Alpers,* la Corte Suprema dijo a la pág. 681: "Nos damos cuenta de que éste es un estatuto penal y debe ser interpretado restrictivamente. Esto significa que no puede crearse ningún delito excepto por las palabras que el Congreso empleó en su sentido usual y corriente. No hay delitos constructivos. *United States* v. *Resnick,* 299 U. S. 207, 210. Lo más importante a determinarse es la intención del Congreso. El lenguaje del estatuto no puede ser tergiversado bajo el pretexto de interpretación, o tan limitado por interpretación que derrote la intención manifiesta del Congreso. *United States* v. *Raynor,* 302 U. S. 540, 552."

Lo importante bajo este enfoque no es interpretar el estatuto bien sea limitadamente o en forma amplia, sino más bien entresacar de su lenguaje la intención legislativa. Ésta es meramente otra manera de decir que no pueda emplearse ninguna regla de interpretación para derrotar el obvio propósito de la legislación. En verdad, en este caso específico estamos siguiendo la regla de la estricta interpretación de los estatutos penales, ya que leemos el estatuto más limitadamente que la apelante. Pero hacemos esto no con motivo de dicha regla de interpretación estricta, sino porque creemos que eso fué lo que tuvo por miras la Legislatura. En síntesis, ninguna regla, incluyendo ésta de interpretación estricta, exige "el rechazo de aquel significado de las palabras que mejor armonice con el contexto y el propósito en mente." *Gooch* v. *United States*, 297 U. S. 124, 128; casos citados en la nota 4.

■ *Quinta*—Si un estatuto es susceptible de dos interpretaciones, una de las cuales lo hará constitucional y la otra inconstitucional, es el deber de las cortes adoptar aquella interpretación que, sin violentar el significado razonable del lenguaje, lo haga constitucional. *Wong Yang Sung* v. *McGrath*, 339 U. S. 33; *Rescue Army* v. *Municipal Court*, 331 U. S. 549, 569; *Screws* v. *United States*, 325 U. S. 91, 98, y casos citados; *Fox* v. *Washington*, 236 U. S. 273; *Central Aguirre* v. *Tribunal de Contribuciones*, 64 D.P.R. 268, 274; *Boneta, Ex parte*, 39 D.P.R. 154, 166; véase *General Motors Acceptance Corp.* v. *Tribunal de Distrito*, 70 D.P.R. 941. En el presente caso la acusada nos invita a que interpretemos la sección 4 en tal forma que la hace palpablemente inconstitucional. Preferimos seguir la sabia regla de interpretar la sección 4 más limitadamente y con ello sostener su constitucionalidad.

■ Como ya indicamos, la acusada insiste en que aquí no procede la aplicación de ésta—o de ninguna otra—regla de interpretación estatutaria. Su teoría es que la sección 4 es clara y libre de toda ambigüedad y que la misma "no puede

desfigurarse so pretexto de interpretarla . . .". *United
States* v. *Alpers*, supra, pág. 681. En apoyo de este argu-
mento cita, entre otros el caso de *Yu Cong Eng* v. *Trinidad*,
271 U. S. 500.

Dicho caso de *Yu Cong Eng* trataba de la constituciona-
lidad de un estatuto de las Filipinas que prohibía a los comer-
ciantes llevar sus "libros de contabilidad en cualquier idioma
que no fuera inglés, español, o algún dialecto local." La
Corte Suprema de Filipinas sostuvo la constitucionalidad de
este estatuto, según se aplicaba el mismo a los comerciantes
chinos que tenían sus negocios en las Filipinas, interpretán-
dolo en el sentido de que éste exigía que se llevaran en los idio-
mas mencionados aquellos libros de contabilidad necesarios
a los fines contributivos. La Corte Suprema de los Estados
Unidos revocó esta sentencia. Resolvió que los claros tér-
minos de la Ley prohibían la interpretación dádale por la
corte local. Dijo la Corte Suprema Nacional que por el con-
trario el estatuto incondicionalmente prohibía que se lleva-
ran los libros en el idioma chino y esto era por tanto incons-
titucional.

Creemos que el caso de *Yu Cong Eng* es distinguible. En
primer lugar, la sección del estatuto envuelto en dicho caso
consistía de una oración simple y sencilla. No había lugar
a interpretación, ya que el estatuto escuetamente prohibía
llevar todos los libros de contabilidad en idiomas que no fue-
ran los especificados en la ley. En segundo lugar, la inter-
pretación de la Corte Suprema de Filipinas sustituyó impro-
piamente una definida disposición prohibitiva por una
disposición mandatoria, indefinida y vaga. Es decir, aun
cuando el lenguaje del estatuto fuera susceptible de la inter-
pretación dádale por la corte filipina, el estatuto según lo
interpretó esta última corte, era demasiado vago e indefi-
nido para cumplir con los requisitos del debido procedimiento.

En el presente caso ninguna de estas dos consideraciones
existe. Indicamos a través de esta opinión nuestro punto
de vista al efecto de que estamos justificados en interpretar

la sección 4 en sentido contrario à sus aparentemente litera-
les términos, en vista de su lenguaje, su historia, el resto
de la Ley, y la naturaleza del asunto en cuestión. Y aún
más importante, no hemos intentado, según hizo la Corte
Suprema filipina, sustituir una norma definida por una
norma vaga e indefinida; por el contrario, nuestra inter-
pretación de la sección 4 evita el peligro de una norma vaga
e indefinida, aplicable igualmente a actuaciones inocentes y
reprensibles, encontrando en la sección 4 una norma de cul-
pabilidad clara y definida. (7)

Concedemos que las cinco reglas arriba discutidas son sólo
ayudas à la interpretación estatutaria, y que como todos
estos métodos, no pueden utilizarse para frustrar la inten-
ción de la Legislatura. *United States* v. *Alpers*, supra;
*Bowie* v. *Buscaglia, Tes.*, 63 D.P.R. 546; *Puerto. Rico Ilus-
trado* v. *Buscaglia, Tes.*, 64 D.P.R. 914, 925. Pero creemos
que pueden ser todos invocados en este caso en apoyo de la
conclusión de que la Legislatura tuvo por miras en la sección
4 disponer que la posesión de objetos susceptibles de uso ino-
cente constituye un delito solamente si se demuestra que
estos objetos están conectados con un juego de bolita.

Existe una contención final de la acusada en
cuanto al significado de la sección 4 que amerita alguna discu-
sión. Arguye que la historia legislativa de la Ley núm. 220
refuerza su contención de que la sección 4 claramente provee
de su faz que la mera posesión de objetos que son suscep-
tibles de uso inocente constituye un delito. Su teoría es que
la sección 4 de la Ley núm. 25 de 1935 dispuso que sería
delito la portación de tales objetos "a sabiendas de que se
utilizan o están utilizando para los juegos ilegales de la
'bolita' . . . ", y que luego la Legislatura deliberadamente
eliminó este lenguaje en la sección 4 de la Ley núm. 220 de

---

(7) El propio caso de *Yu Cong Eng* dice que (pág. 518) "Es el deber
de una corte al considerar la validez de una ley darle a ésta aquella inter-
pretación razonable a que se pueda llegar para ajustar la ley a la Cons-
titución." Esto es lo que creemos hemos hecho aquí.

1948 con el fin de evitar la dificultad de establecer infracciones de la sección 4 de la Ley núm. 25, según ha sido interpretada por nuestros casos.[8] Según ella, no podemos ejercer funciones legislativas "derogando" la Ley de 1948 y "reviviendo" la Ley de 1935.

Es cierto que nuestros primeros casos, en los cuales descansa la acusada al argumentar este punto, discutieron el requisito de la conexión con un juego de bolita. Pero se hizo esto únicamente para demostrar que no se podía obtener la convicción de un acusado por *manipular* tal juego a menos que se demostrara tal conexión. Eso es obviamente cierto; pero nada tiene que ver con el problema de si la Ley de 1948, que por primera vez incluye como delito la posesión, proveyó o no que para que la posesión de materiales aparentemente inocuos constituya un delito, debe demostrarse que tal posesión está conectada con un juego de la bolita.

Los casos antes mencionados no discuten el requisito de que debe demostrarse alguna conexión con el juego de la bolita en una acusación por posesión. Por el contrario, aquellos casos, al exponer una de las debilidades de la Ley de 1935, indican que la posesión de materiales de bolita no era un delito bajo el estatuto anterior y que, en ausencia de prueba de que se transportaban materiales de bolita o de que se manipulaba un juego de bolita, no se podía obtener una convicción bajo el mismo. Por consiguiente, la Legislatura se dispuso mediante la Ley de 1948 a subsanar este defecto: por primera vez la posesión de materiales de bolita fué declarada un delito. Pero nada encontramos en el lenguaje de nuestros casos interpretando la Ley de 1935 o en la Ley núm. 220 de 1948 que demuestre que la Legislatura quiso, al declarar delito la posesión, eliminar el requisito de que debe demostrarse que la posesión de objetos que son susceptibles de uso inocente está conectada con el juego de bolita.

---

[8] *Pueblo* v. *Vega*, 67 D.P.R. 773; *Pueblo* v. *Toro*, 66 D.P.R. 723; *Pueblo* v. *Salabarría*, 57 D.P.R. 130; *Pueblo* v. *Estronza*, 57 D.P.R. 897.

Para concluir, tomamos conocimiento judicial de que la manipulación de la bolita en Puerto Rico es un mal grave. La Legislatura ha optado por legalizar algunas clases de juego. *Pueblo* v. *Escambrón Beach Club*, 63 D.P.R. 761, 780–81; Ley núm. 221, Leyes de Puerto Rico 1948. Pero ha reconocido los peligros y la influencia corruptora de la bolita, juego mediante el cual las personas inescrupulosas exprimen nuestra clase pobre. La Ley núm. 220 representa un paso laudable para combatir efectivamente estas actividades ilícitas. La Corte Suprema nos ha dicho que "va lejos" para declarar válidos tales estatutos. (⁹) Creemos que hemos seguido dicho mandato en este caso.

Es conveniente indicar que una vez que hayamos concluído que la sección 4 requiere una demostración de que los objetos envueltos estaban conectados con un juego de bolita, el problema constitucional se desvanece. La acusada no alega que la ley así interpretada viola el debido procedimiento. Arguye solamente que no puede leerse en esta forma; que debe leerse tal como ella la interpreta; y que así interpretada es inconstitucionalmente vaga. Pero toda vez que diferimos de ella en cuanto al significado de la sección 4, la cuestión constitucional desaparece de este caso. (⁹ᵃ)

---

(⁹) "Esta Corte va lejos con el fin de sostener leyes estatales que tratan de delitos, difíciles de precisar, cuando no están enlazadas con limitaciones sobre libre expresión [citando en la nota, *Omaechevarría* v. *Idaho*, 246 U. S. 343; *Waters–Pierce Oil Co.* v. *Texas*, 212 U. S. 86]. Tenemos la misma actitud hacia los estatutos federales [citando en la nota, *United States* v. *Petrillo*, 332 U. S. 1; *Gorin* v. *United States*, 312 U. S. 19]. Solamente una convicción definida de la mayoría de esta corte al efecto de que la convicción viola la Enmienda Décimocuarta, justifica la revocación de la corte encargada originalmente de la responsabilidad de proteger a las personas de ser convictas bajo una ley estatal vaga." *Winters* v. *New York*, 333 U. S. 507, 517–18.

(⁹ᵃ) En *Pueblo* v. *Almodóvar*, resuelto en el día de hoy, el acusado impugna la constitucionalidad de la sección 4. En dicho caso nunca llegamos a la cuestión constitucional, ya que se decidió por otros fundamentos. Sin embargo, en el caso de autos hemos considerado cuidadosamente todos los argumentos sobre constitucionalidad incluídos en el alegato del abogado del apelante en el caso de *Almodóvar*.

## II

■ El segundo error señalado es que la corte de distrito erró al declarar sin lugar la excepción perentoria interpuesta contra la acusación. La teoría de la excepción fué que la acusación no aducía hechos suficientes para constituir una infracción a la sección 4 de la Ley núm. 220 de 1948. La acusada se basa en los artículos 71, 82, 83, Código de Enjuiciamiento ·Criminal, ed. 1935, y *El Pueblo* v. *Marini*, 22 D.P.R. 11. Alega que la acusación era fatalmente defectuosa porque le imputaba que tenía en su posesión "material" que ella podía usar y usaba en el juego ilegal de la bolita. Sostiene que la palabra "material" es muy vaga e imprecisa ya que conceblemente podría incluir no solamente los objetos expresamente reseñados en la sección 4 sino también un zapato, un traje, o cualquier cosa que no pertenezca al mundo del espíritu.

El Fiscal Auxiliar de este Tribunal admite que la acusación pudo haberse redactado en términos más específicos. Pero convenimos con él en que una persona de inteligencia ordinaria podría comprender de qué se le acusaba. La palabra "material" incluye los implementos específicamente nombrados en la sección 4. Además, las palabras genéricas "material" y "materiales" son frecuentemente usadas a través de toda la Ley núm. 220. En verdad, el uso de tales términos generales se hace necesario debido a los ingeniosos métodos empleados por los que manipulan la bolita con el fin de encubrir sus actividades.(¹⁰) En vista de la naturaleza de la materia envuelta, resolvemos que la imputación de posesión de tal material fué suficientemente precisa, a los fines de exponer una infracción bajo la sección 4. El caso de *Marini* fué resuelto bajo hechos diferentes y bajo una ley dife-

---

(¹⁰) Véase el *New York Herald Tribune* de febrero 28 de 1950, informando la confiscación de folletos que presuntivamente ofrecían ayuda espiritual. Los folletos contenían ciertos números al calce del "mensaje espiritual" de cada día. Estos números estaban supuestos a ser referencias y contrarreferencias a los pasajes de la Biblia. La policía alegaba que de hecho eran "recomendaciones de los números a jugarse en la bolita."

rente, y es distinguible. Si la acusada hubiera deseado una descripción más específica del material, la pudo haber obtenido solicitando un pliego de particulares. *Pueblo* v. *Palacios*, 66 D.P.R. 961, 963; *Pueblo* v. *Méndez*, 67 D.P.R. 824, 831; *United States* v. *Petrillo*, 332 U. S. 1, 10–11. Pero no hizo tal moción.

### III

El tercer error señalado por la apelante es que la corte inferior erró al declarar sin lugar la moción sobre supresión de evidencia obtenida como resultado del allanamiento de la casa de la acusada. La apelante interpone varios ataques contra la declaración jurada en que se basó la orden de allanamiento y contra dicha orden propiamente dicha. Sin embargo, el único punto digno de mención es su contención de que la orden de allanamiento era nula porque de su faz no decía que debía ejecutarse y devolverse al juez que la expidió dentro del término de diez días contados desde su fecha.

El artículo 512, Código de Enjuiciamiento Criminal, ed. de 1935, dispone que una orden de allanamiento debe ser ejecutada y devuelta dentro de los diez días de su fecha. Pero no dice que esto se hará constar en la propia orden. Tampoco el artículo 507, que es el que nos suministra la forma de la orden de allanamiento, contiene una disposición a ese efecto. Bajo un estatuto federal similar, se ha resuelto que no es necesario incorporar esta disposición de ley en la propia orden de allanamiento. *Benton* v. *United States*, 70 F.2d 24, 26 (C.C.A. 4, 1934), *cert.* denegado, 292 U.S. 642.[11] La orden en este caso fué de hecho ejecutada y

---

[11] En un caso anterior, nuestra Corte de Apelaciones interpretó el estatuto *federal* en sentido contrario. *Giles* v. *United States*, 284 F. 208, 215 (C.C.A. 1, 1922). Pero toda vez que aquí está envuelto el significado de un estatuto local—artículo 512 del Código de Enjuiciamiento Criminal—estamos en libertad de adoptar nuestra propia regla. *De Castro* v. *Board of Comm'rs.*, 322 U. S. 451.

devuelta dentro de los diez días de su fecha de expedición. Por tanto, resolvemos que bajo el artículo 512 la orden de allanamiento fué válidamente expedida y ejecutada.

## IV

En los errores cuarto y quinto la acusada ataca la apreciación que de la evidencia hizo la corte inferior. La prueba demuestra que tres detectives registraron la casa de la apelante, de conformidad con la orden de allanamiento; que entre las cosas que encontraron había listas con números de tres cifras, seguidas por un guión y otra cifra; que la bolita se juega apostando a un número de tres cifras; que en una lista de bolita el primer número es al que se le apuesta; que el número después del guión es el importe de la apuesta; y que estas listas eran números de bolita, ya que cumplían con la anterior descripción de listas de números de bolita.

La acusada no ofreció prueba alguna para controvertir esta evidencia. Tampoco refutó la prueba de que la bolita se juega en la forma descrita. En verdad, hemos tenido ante nuestra consideración tantos casos en que esto se ha demostrado, que casi podemos tomar conocimiento judicial de que en Puerto Rico la bolita por lo general se juega apostándole a los números del 000 al 999, confrontándolos con las tres últimas cifras de las loterías de Puerto Rico o Santo Domingo, o con el "pool" de los hipódromos locales, y que las listas de bolita consisten de una serie de tres cifras, seguidas por un guión y el importe de la apuesta. Véase, por ejemplo, *Pueblo* v. *Acevedo*, 70 D.P.R. 562. En ausencia de prueba en contrario, la corte de distrito por tanto tenía derecho a concluir que las listas de números introducidas en evidencia no podían ser usadas para ningún otro fin que no fuera para jugar bolita.

En la Parte I sostuvimos la constitucionalidad de la sección 4 de la Ley núm. 220, según ésta se aplica a la posesión de materiales que son susceptibles de uso inocente por el fundamento de que la sección 4 requiere una demostración afirmativa de que estos materiales estaban de hecho conectados

con un juego de bolita. Pero, como cuestión de evidencia, se presenta un punto diferente cuando como ocurre aquí los materiales no son susceptibles de uso inocente, sino que son de tal naturaleza que no pueden ser usados para otra cosa que no sea para manipular la bolita. Bajo estas circunstancias, una infracción de la sección 4 se establece mediante prueba de la posesión de tales materiales; no se requiere evidencia adicional de la conexión con un juego de bolita, precisamente porque los propios materiales establecen la referida conexión.([12]) Véanse *Adams* v. *New York*, 192 U. S. 585, 599; *Ex parte McClain*, 134 Cal. 110 (1901); *Ford* v. *State of Maryland*, 85 Md. 465, 41 L.R.A. 551 (1897). *Cf.* *United States* v. *Rabinowitz*, 339 U. S. 56, decidido en febrero 20, 1950, en el que la corte dijo (pág. 8 de la opinión en hoja suelta) "la posesión de los sellos falsificados y alterados constituía delito, lo mismo que constituye delito poseer herramientas de escaladores, boletos de loterías o dinero falso."

La situación es similar a la discutida en el caso de *United States* v. *Raynor*, 302 U. S. 540, en el cual la corte sostuvo una convicción bajo una ley federal por poseer papel similar a aquél adoptado por el Secretario del Tesoro para imprimir las obligaciones y otras colaterales de los Estados Unidos. La Corte Suprema dijo que el papel encontrado en manos del acusado (pág. 543) "no sólo era el ideal para falsificar, sino que es difícil concebir que se pueda usar para algún otro fin." Toda vez que la acusada no impugna el testimonio no controvertido de que las listas en cuestión no

---

([12]) La apelante no levanta cuestión alguna sobre el hecho de que la sección 4 de la Ley núm. 220, contraria a la sección 4 de la Ley de 1935, no contiene disposición alguna al efecto de que el delito debe cometerse "a sabiendas". Por tanto, no está ante nos la cuestión de si la posesión accidental o fortuita sería una buena defensa bajo la sección 4 de la Ley núm. 220. *Cf. Screws* v. *United States*, 325 U. S. 91, 96–97, 101–5, 153–57; *Pueblo* v. *López*, 67 D.P.R. 623, 630 *et seq.*; *Pueblo* v. *Díaz*, 62 D.P.R. 136, 143; *Pueblo* v. *Solla*, 66 D.P.R. 957, 959; *El Pueblo* v. *Vázquez*, 26 D.P.R. 14; Rottschaefer *on Constitutional Law*, págs. 763–4.

podían usarse para ningún otro propósito excepto jugar bolita, la prueba en este caso fué suficiente para establecer una infracción de la sección 4.([13])

*La sentencia de la corte de distrito será confirmada.*

El Juez Asociado Sr. Negrón Fernández se inhibió.

Opinión disidente del Juez Asociado Sr. Todd, Jr.

Disiento. La elaborada y extensa opinión de la Corte me convence de que erramos en el caso de *Pueblo* v. *De Jesús,* 70 D.P.R. 37, al tratar de sostener la constitucionalidad de la sección 4 de la Ley núm. 220 de 1948 ((1) pág. 739), Ley de la Bolita, insertando en ella, por interpretación, fra-ses que la Legislatura había eliminado expresamente de la sección 4 de la Ley núm. 25 de 1935 ((2) pág. 153). Ahora

---

([13]) El caso de *Pueblo* v. *Aleja Romero viuda de Ortiz, per curiam* resuelto el 17 de enero de 1950, envolvía un problema algo similar. En dicho caso empleamos el siguiente lenguaje: "Los errores segundo y ter-cero se relacionan con la suficiencia de la prueba. Lo esencial en las alegaciones de la apelante es que la mera posesión de material de bolita no es suficiente. Pero, como hemos decidido en *Pueblo* v. *De Jesús,* 70 D.P.R. 37 y *Pueblo* v. *Acevedo,* resuelto en noviembre 21, 1949, la pose-sión de material de bolita que pueda utilizarse en un juego de bolita constituye una infracción del estatuto. Y en este caso la evidencia fué suficiente a este respecto."

El caso de *Romero* ha sido apelado a la Corte de Apelaciones para el Primer Circuito. Por tanto, creemos conveniente corregir cualquier mala interpretación que pueda surgir a virtud del lenguaje un tanto conciso de nuestra opinión *per curiam* en el caso de *Romero.* En dicho caso, como en el presente, la convicción estaba basada en la posesión de listas consistentes de números de tres cifras, seguidos de un guión y de otra cifra a la derecha. Allí, como aquí, hubo prueba incontrovertida de que tales listas se usan para jugar bolita: las tres cifras representan el número jugado; la cifra después del guión representa el importe de la apuesta. En ausencia de cualquier prueba en contrario, la conclusión de la corte sentenciadora de que estas listas no podían usarse nada más que para manipular un juego de bolita, era razonable y justificada. Bajo estas circunstancias, como hemos visto, puede obtenerse una convicción bajo la sección 4 sin evidencia adicional que establezca la conexión efec-tiva con un juego de bolita. Véanse también *Pueblo* v. *Acevedo,* 70 D.P.R. 562; *Pueblo* v. *Cortés,* 70 D.P.R. 479; *Pueblo* v. *Báez,* 70 D.P.R. 609.

(Con motivo de estar el caso de *Romero* en apelación, el Juez Presidente Sr. De Jesús y el Juez Asociado Sr. Marrero, quienes con-curren en esta opinión, son del criterio de que la nota 13 no debe apa-recer en ella. En su consecuencia, las manifestaciones vertidas en la nota representan los puntos de vista tan sólo del ponente.)

se pretende curar el error en que incurrimos diciendo que en el caso de *Pueblo* v. *De Jesús* no dijimos lo que dijimos sino que quisimos decir otra cosa distinta. Parecería que todo se reduce a un juego de palabras parecido al de "donde digo digo no digo digo sino que digo Diego". Por mi parte no puedo concurrir, de nuevo, con este razonamiento.(¹)

En la interpretación de un estatuto criminal, si bien esta Corte tiene amplia facultad para tratar de determinar la verdadera intención de la Asamblea Legislativa al aprobar determinada ley, no es tanta, a mi juicio, que llegue hasta aquélla de insertar frases que, por el contrario, no existan en la ley y que fueron expresamente suprimidas por el legislador, o variar una palabra por otra con el fin de crear un delito allí donde no se definió clara y expresamente. La intención legislativa quedó expresada al eliminar dichas frases de la sección 4 de la ley y al usarse la disyuntiva "o", no sólo en la sección 4 sino en otras secciones de la ley.

Reducida así a su mínima y sencilla expresión la cuestión envuelta no necesita de extensas citas de autoridades y jurisprudencia para llegar a la conclusión ineludible de que las cortes bajo el manto de que están interpretando no pueden legislar. Cierto que a veces se legisla judicialmente— "en los intersticios", como dijo el Juez Holmes—pero aquí no se está haciendo eso, sino que se está legislando abiertamente creándose un delito definido allí donde la ley, por deficiencia de redacción o porque ésa fué la intención legislativa, no creó delito alguno, o por mejor decir, hizo delictivo tanto lo que podía serlo como lo que podía ser un acto inocente.

En el caso de *Pueblo* v. *De Jesús*, supra, lo que resolvimos fué que la intención del legislador fué "prohibir el portar, usar, conducir tales objetos [los especificados en la sec-

---

(¹) Parece de justicia recordar que en el caso de *Pueblo* v. *De Jesús*, 70 D.P.R. 37, hicimos constar que: "El apelante no cita autoridad alguna en apoyo de la alegada inconstitucionalidad de la ley." Es decir, es realmente en el caso de *Pueblo* v. *Almodóvar*, resuelto hoy (ante, pág. 20), y en el presente, que hemos tenido el beneficio de una amplia y concienzuda discusión en los alegatos de las partes de la cuestión constitucional planteada.

ción 4] *cuando se hayan utilizado o se estén utilizando* en relación con los juegos prohibidos por el estatuto." (Bastardillas nuestras.)

Las dos frases subrayadas no existen en la sección 4 de la Ley núm. 220 de 1948, la cual, en lo pertinente, dispone que:

"Toda persona que fuere sorprendida portando o conduciendo o que tuviere en su poder en cualquier concepto cualquier papeleta, billete, *ticket,* libreta, lista de números o letras, boletos o implementos *que pudieren usarse para los juegos ilegales* de la 'Bolita', 'Boli-pool', combinaciones relacionadas con los 'Pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas, y toda persona que poseyere, vendiere, o en cualquier forma transportare éstos o cualesquiera otros análogos *que se pudieren utilizar o usar en dichos juegos ilícitos,* o conectados con la práctica de los mismos, incurrirá en delito público. . ." (Bastardillas nuestras.)

La sección 4 de la Ley núm. 25 de 1935 (esta ley fué derogada expresamente por la. núm. 220 de 1948) por el contrario disponía, en lo pertinente, que:

"Toda persona que fuere sorprendida portando o conduciendo cualquier papeleta, billete, *ticket,* libreta, lista de números o implementos, a sabiendas de *que se utilizan o están utilizando para los juegos ilegales* de la 'bolita', *'boli-pool',* combinaciones clandestinas relacionadas con los *'pools'* de los hipódromos de Puerto Rico, y loterías clandestinas, y toda persona que vendiere éstos o cualesquiera otros análogos que se probare representar algún billete, suerte, acción o interés en dichos juegos ilícitos o conectados con la práctica de los mismos, será arrestada inmediatamente, formulándose la correspondiente denuncia. . ." (Bastardillas nuestras.)

Que las frases "que pudieren usarse" y "que se pudieren utilizar o usar", usadas en la Ley núm. 220 de 1948 no significan lo mismo que la frase "que se utilizan o están utilizando" de la Ley núm. 25 de 1935, no puede haber duda alguna. Sin embargo, en el caso de *Pueblo* v. *De Jesús,* supra, dijimos, erróneamente en mi concepto, que la intención del legislador fué todo lo contrario de lo que la ley

expresamente dispone. Se dice ahora, sin embargo, que lo que quisimos decir en dicho caso no fué lo que dijimos, sino que "Lo que en efecto hicimos—y ahora lo hacemos expresamente—fué leer la conjunción 'y' por la conjunción en bastardillas 'o'."

No estoy de acuerdo. En el caso de *Pueblo* v. *De Jesús*, supra, ni se planteó, ni se discutió, ni se resolvió, nada en relación con nuestra facultad para interpretar que la palabra "o" es equivalente a "y", según se usa dicha palabra disyuntiva en el contexto de la sección 4, supra. Nos limitamos, por interpretación, a insertar frases en dicha sección, las cuales habían sido expresamente eliminadas por el legislador. Es ahora, por primera vez y para tratar de salvar el estatuto del nuevo ataque constitucional de que ha sido objeto, que se abandona la interpretación que se dió originalmente y se le da una nueva interpretación cambiándose la "o" por la "y".

Pero es que este cambio puede hacerse, por interpretación judicial, cuando la intención del legislador no está claramente expresada en el estatuto. En otras palabras, y en cuanto a un estatuto penal se refiere, éste debe ser interpretado restrictivamente, es decir, el delito debe estar claramente determinado por la intención legislativa y no por interpretación judicial. Aun en el caso de *United States* v. *Alpers*, 338 U. S. 680, citado en la opinión de la Corte, se resolvió que "El lenguaje del estatuto no puede ser tergiversado (*distorted*) bajo el pretexto de interpretación o tan limitado por interpretación que derrote la intención manifiesta del Congreso. *United States* v. *Raynor*, 302 U. S. 540, 552." Lo único que hizo la corte en el caso de *Alpers* fué negarse a aplicar la regla de *ejusdem generis* a la interpretación del estatuto penal allí envuelto. (²)

Considero que lo que se hace ahora con la interpretación que se da a la sección 4, supra, es tergiversar el lenguaje

---

(²) Tres jueces, Black, Frankfurter y Jackson, disintieron, y uno, Douglas, no tomó parte en la decisión.

usado por el legislador con el fin de curar el defecto consti-. tucional de que padece. Si el legislador eliminó deliberada- mente de la sección 4 el requisito de que los implementos se. estuvieran utilizando para los juegos ilegales especificados y por el contrario usó la frase "que se pudieren utilizar o usar" en dichos juegos ilícitos, y en otras secciones de la Ley núm. 220 usó la frase en la alternativa, [3] es decir, si se eliminó, como único requisito, el de la conexión directa de los implementos con los juegos y se sustituyó por la posi- bilidad de que se pudieran utilizar o usar para el fin ilícito, no compete a esta Corte, bajo el manto del poder de inter- pretación, decir que el legislador tuvo la intención de que donde empleó la disyuntiva "o", ésta debe leerse como si dijera "y". El lenguaje usado por el legislador es claro y sin ambigüedades. Es aplicable, por tanto, la jurispruden- cia citada en la opinión de la Corte al efecto de que el debido procedimiento de ley requiere que todo delito debe ser defi- nido con claridad y exactitud. *Cantwell* v. *Connecticut*, 310 U. S. 296; *Pierce* v. *United States*, 314 U. S. 306; *Lanzetta* v. *New Jersey*, 306 U. S. 451; *Winters* v. *New York*, 333 U. S. 507 y casos citados en la nota (2) de la opinión de la Corte. Especialmente es aplicable el lenguaje citado del caso de *Fairmont Co.* v. *Minnesota*, 274 U. S. 1, 10, al efecto de que: "No es permisible aprobar una ley que en efecto tienda una red para que todo el mundo caiga en ella, en la posibilidad de que, si bien los inocentes seguramente caerán en sus tejidos, también algún delincuente caiga en igual forma", ya que permitir que tal estatuto subsista sería vio- lar el mandato del caso de *Winters*, supra, pág. 520, de que

---

(3) En la sección 2, a la frase "se estén utilizando" de la Ley de 1935 se agregó la frase "o puedan utilizarse". En la sección 6, donde decía "para ser utilizado y distribuído en la manipulación de los juegos ilegales" se cambió por la frase "que pudiera usarse, o se use", y en el segundo párrafo de la sección 6, dice: "que se hayan usado o pudieren usarse". Es decir, estas secciones demuestran la creación, en la alter- nativa, de dos delitos, al emplearse la disyuntiva "o". No puede decirse lógicamente que, en la sección 4, la intención del legislador fué que la "o" significara "y".

"Cuando un estatuto es tan vago que declara penable un acto inocente, no puede sostenerse una convicción bajo el mismo."

A mi juicio, ninguna de las cinco reglas sobre interpretación de estatutos, citadas en la opinión de la Corte, son aplicables a este caso debido a que el lenguaje de la sección 4 es claro y a que la historia legislativa de la Ley núm. 220 de 1948 al compararse con la Ley núm. 25 de 1935, demuestra cuál fué la intención del legislador al aprobar dicha sección 4. Contrario a lo que se resuelve por la Corte, considero que el caso de *Yu Cong Eng* v. *Trinidad*, 271 U. S. 500 es ·aplicable al presente debido precisamente a que no estamos justificados en leer la sección 4 contraria a· sus términos debido a su historia y al contenido del resto de la Ley núm. 220 de 1948. (4)

Me doy perfecta cuenta de lo que significa, en el orden social, declarar que la sección 4 de la Ley de Bolita, es nula. Empero, corresponde a la Asamblea Legislativa corregir las deficiencias de la Ley núm. 220 de 1948 y no debe pretenderse que sean las cortes las que, por interpretación que equivale a legislación judicial impropia, (5) lo hagan, cuando

---

(4) Esa jurisprudencia no hace otra cosa que reiterar lo que nuestros propios códigos disponen en materia de interpretación de estatutos. Así el artículo 14 del Código Civil dispone que "Cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu." Y el artículo 388 del Código de Enjuiciamiento Civil nos dice que "En la interpretación de un estatuto o documento, el ministerio del juez es simplemente averiguar y declarar lo que textualmente y en substancia contiene, *no insertar lo que se hubiere omitido*, ni omitir lo que se hubiere insertado; y cuando contuviere varias disposiciones o extremos, se adoptará la interpretación que, de ser posible, diere efecto a todos." (Bastardillas nuestras.)

(5) Me doy cuenta de que en la nota (5) del caso de *Pérez* v. *Tribunal de Distrito*, 69 D.P.R. 4, 19, dijimos que legislar judicialmente "Frecuentemente es un instrumento semántico empleado por aquéllos a quienes no les gusta el resultado obtenido por una corte enfrascada en la tarea de determinar el significado de una ley. Aquéllos que están conformes con el resultado la llaman 'interpretación judicial'." En el presente caso no es que no me guste sino que no estoy conforme con el resultado a que llega la Corte pues creo que la opinión es una perfecta pieza de legislación judicial.

el texto de la ley y su historia legislativa demuestran que, por error o inadvertencia, el legislador no definió claramente el delito y al no hacerlo, puso en peligro la libertad de personas por el hecho de que posean o transporten materiales completamente inocuos pero que "se pudieren utilizar o usar" en relación con los juegos prohibidos en la ley.

Debería revocarse la sentencia.