Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (X)
DJ 2024-062C

| ISLAND PORTFOLIO SERVICES, LLC, como agente de FAIRWAY ACQUISITIONS FUND, LLC<br><br>Apelado<br><br>v.<br><br>NAIBY C. ANDRILLON ALERS<br><br>Apelante | TA2025AP00080 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala de Toa Baja<br><br>Civil núm.: DO2025CV00057<br><br>Sobre: Cobro de Dinero (Regla 60) |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 14 de noviembre de 2025.

Comparece ante este tribunal apelativo, el Sr. Naiby Andrillón Alers (señor Andrillón Alers o apelante) mediante el recurso de *Apelación* de epígrafe y nos solicita que revoquemos la *Orden* dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 5 de mayo de 2025, notificada el 8 de mayo siguiente. Mediante el aludido dictamen, el TPI denegó la solicitud de desestimación instada por el apelante y señaló la vista en su fondo para una fecha posterior.

Asimismo, nos peticiona que revoquemos la *Sentencia* dictada por el foro primario, el 13 de junio de 2025, notificada el 16 de junio posterior. Mediante el referido dictamen, el TPI declaró *Ha Lugar* a la demanda instada por Island Portfolio Services, LLC (Island), como agente gestor de Fairway Acquisitions Fund, LLC (Fairway) (en conjunto, parte apelada). En consecuencia, ordenó al señor Andrillón Alers a pagar $10,515.23 de principal, más los intereses

legales. A su vez, concedió $1,000 en concepto de honorarios de abogado.

Por los fundamentos que expondremos a continuación, confirmamos la *Orden* y la *Sentencia* apeladas.

**I.**

El 4 de marzo de 2025, Island Portfolio, como agente gestor de Fairway, presentó una demanda sobre cobro de dinero, bajo el proceso sumario de la Regla 60 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 60, en contra del señor Andrillón Alers.[1] En esencia, alegó que el apelante solicitó a Popular Auto, LLC (Popular) la extensión de un crédito asociado a su cuenta de préstamo de auto, número 82200121082680001, del vehículo marca Hyundai, modelo Veloster, tablilla IUI-958. Sostuvo que Fairway era tenedor y dueño de dicha cuenta, toda vez que, adquirió mediante cesión todos los derechos, títulos e intereses con relación a esta. Arguyó que, conforme a los términos y condiciones del contrato, la deuda estaba vencida, era cierta, líquida y exigible. Detalló que el apelante adeudaba $10,515.23 por concepto de principal. Añadió que la deuda no había sido satisfecha, a pesar de las múltiples cartas y llamadas remitidas por parte de Fairway.

En virtud de lo anterior, solicitó $10,515.23 más intereses legales sobre dicha cantidad, a partir de la fecha de la presentación de la demanda hasta su total y completo pago; así como costas, gastos y la suma de 10% del total adeudado por concepto de honorarios de abogado.

Tras varios trámites procesales, el 5 de mayo de 2025, se celebró la *Vista* conforme a la Regla 60, *supra*.[2] De la *Minuta* surge que el señor Andrillón Alers envió una oferta a la parte apelada, a

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), Entrada núm. 1.

[2] SUMAC TA, Entrada núm. 17.

los fines de llegar a un acuerdo transaccional. No obstante, la parte apelada rechazó la oferta en corte abierta y, solicitó un término para ver el caso. Ello pues, manifestó que no estaba listo para atender la vista. Por su parte, el apelante solicitó la desestimación del caso de epígrafe, puesto que la parte apelada no estaba preparada para la vista. Atendidos los planteamientos de las partes, el TPI declaró *No Ha Lugar* a la solicitud del señor Andrillón Alers y señaló la vista para el 9 de junio de 2025. El 5 de mayo de 2025, el foro primario emitió la *Orden* recurrida reafirmando la denegación de la desestimación y mantuvo la fecha de la vista según programada. La misma se notificó el 8 de mayo siguiente.[3]

Posteriormente, el 23 de mayo de 2025, el señor Andrillón Alers presentó una *Solicitud de Reconsideración y en la Alternativa Solicitud de Determinaciones de Hechos y Conclusiones de Derecho.*[4] En esta adujo que, durante la vista celebrada el 5 de mayo de 2025, la parte apelada no estaba preparada para ver la vista en su fondo debido a que no contaba con su testigo principal. Enfatizó que dicha parte no presentó justificación alguna, por la cual su testigo no estuvo presente en la vista. Además, razonó que, el proceso sumario de la Regla 60, *supra,* no otorgaba a las partes el derecho a solicitar la transferencia de la vista por no estar preparados. A su vez, esbozó que la agilidad de dicha regla aplicaba a todas las partes. Por tanto, reiteró que procedía la desestimación de la demanda, puesto que la parte apelada dejó de exponer una reclamación que justificara la concesión de un remedio. En la alternativa, solicitó determinaciones de hechos y conclusiones de derecho, al amparo de la Regla 43.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R.43.1.

---

[3] SUMAC TPI, Entrada núm. 18. En *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 esc.2 (1997), el Tribunal Supremo estableció que la revisión de una determinación interlocutoria se puede realizar cuando se dicte la sentencia final, si la misma resulta adversa y la parte considera importante revisar el dictamen interlocutorio por afectar la decisión del caso.

[4] SUMAC TA, Entrada núm. 20.

En la misma fecha, el TPI emitió una *Orden* que se notificó el 28 de mayo de 2025, declarando *No Ha Lugar* a la solicitud de reconsideración.[5] Asimismo, declaró *No Ha Lugar* a la solicitud de determinaciones de hechos y conclusiones de derecho, toda vez que resulta improcedente al no haberse celebrado la vista en su fondo ni dictado sentencia. Finalmente, reiteró el señalamiento de la vista para el 9 de junio de 2025.

Inconforme, el 28 de mayo de 2025, el señor Andrillón Alers presentó su *Segunda Solicitud de Reconsideración y en la Alternativa Solicitud de Determinaciones de Hechos y Conclusiones de Derecho,* en la cual reiteró sus planteamientos de la primera solicitud de reconsideración.[6] De igual forma, señaló que las actuaciones de la parte apelada provocaban que los procesos fueran más lentos y costosos. Además, aclaró que no solicitó determinaciones de hechos adicionales, sino determinaciones de hechos iniciales. A su vez, manifestó que el tribunal declaró *No Ha Lugar* a la petición de desestimación; sin embargo, no fundamentó su determinación. Sostuvo que, esperar a la vista, tornaría su petición en académica. Cónsono con lo anterior, solicitó al TPI que reconsiderara la *Orden* notificada el 8 de mayo de 2025 y, en consecuencia, dictara la *Sentencia* desestimando la *Demanda* con perjuicio.

Al día siguiente, el TPI emitió una *Resolución Interlocutoria* que se notificó el 3 de junio de 2025.[7] En esta explicó que, declarar *No Ha Lugar* a la moción de desestimación y señalar la vista para una fecha posterior, no causaba ningún perjuicio al apelante. Además, indicó que no tenía que realizar determinaciones iniciales o adicionales, toda vez que la vista no había sido celebrada, y no se había dictado sentencia. Finalmente, declaró *No Ha Lugar* a la

---

[5] SUMAC TA, Entrada núm. 22.
[6] SUMAC TA, Entrada núm. 23.
[7] SUMAC TA, Entrada núm. 25.

*Segunda Solicitud de Reconsideración y en la Alternativa Solicitud de Determinaciones de Hechos y Conclusiones de Derecho.*

Por su parte, el 2 de junio de 2025, Island presentó su *Oposición a Moción de Reconsideración y Segunda Moción de Reconsideración a Desestimación con Perjuicio.*[8] En esencia, manifestó que, si bien era cierto que la Regla 60, *supra*, perseguía la pronta y eficiente disposición de los casos en cobro de dinero, ello no eximía a las partes, ni al tribunal de aplicar el debido proceso de ley, ni las garantías procesales mínimas de justicia. Detalló que la drástica sanción de desestimar la *Demanda* únicamente procedía luego de que el tribunal hubiese aplicado otras medidas y estas resultaran ineficaces, quedando demostrada la desatención y el abandono total de la parte con interés. Por ello indicó que la incomparecencia de su testigo a una vista inicial no justificaba la desestimación de la *Demanda* con perjuicio por ser una sanción desproporcionada, irrazonable y que atentaba contra las normas procesales aplicables de la Regla 60, *supra*, y limitaba su capacidad de recuperar su acreencia.

Así las cosas, el 9 de junio de 2025, el TPI celebró la vista en cobro de dinero.[9] Surge de la *Minuta* que Island presentó, como testigo, al Sr. Kelvin Manuel Rosa Vélez (señor Rosa Vélez), representante de dicha compañía. Por su parte, el representante legal del apelante tuvo la oportunidad de contrainterrogar a dicho testigo y reiteró que procedía la desestimación de la *Demanda* de epígrafe. Durante el testimonio del señor Rosa Vélez, se admitieron los siguientes documentos en evidencia:

> Exhibit Núm. 1 – Resolución Corporativa
> Exhibit Núm. 2 – Licencia Daco Vigente 2025
> Exhibit Núm. 3 – *Special Power of Attorney*
> Exhibit Núm. 4 – *Bill of Sale*
> Exhibit Núm. 5 – *Bill of Sale Excerpt (Seller Data)*
> Exhibit Núm. 6 – Carta de Aviso de Cobro

---

[8] SUMAC TA, Entrada núm. 24.
[9] SUMAC TA, Entrada núm. 30.

Exhibit Núm. 7 – Contrato de Venta al Por menor a Plazos Vehículos
Exhibit Núm. 8 – Acuerdo de Entrega Voluntaria
Exhibit Núm. 9 – Informe de Condición
Exhibit Núm. 10 – Valor Estimado en el Mercado
Exhibit Núm. 11 – Notificación Plan para Disponer la Propiedad
Exhibit Núm. 12 – Contrato de Reventa (*Invoice*)
Exhibit Núm. 13 – Notificación de Deficiencia
Exhibit Núm. 14 – *Payoff Loan Popular Auto*

Luego de examinar los planteamientos de las partes, el 13 de junio de 2025, notificada el 16 de junio siguiente, el TPI emitió la *Sentencia* declarando Ha Lugar a la *Demanda*. Cónsono con lo anterior, el foro primario determinó que el apelante dejó de cumplir con las obligaciones contraídas, y que la deuda era una líquida, vencida y exigible. Por tanto, resolvió que el apelante adeudaba a la parte apelada la suma de $10,515.23. Así pues, ordenó al señor Andrillón Alers a pagar dicha suma de principal, más los intereses legales desde el día en que se emitió la *Sentencia* hasta su total y completo saldo. A su vez, le impuso la suma de $1,000 por concepto de honorarios de abogado.[10]

Inconforme, el apelante acudió ante este foro revisor imputándole al foro primario haber incurrido en los siguientes errores:

ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SOLICITUD DE DESESTIMACIÓN CON PERJUICIO DE LA DEMANDA PRESENTADA CUANDO LA PARTE APELADA NO PRESENTÓ EVIDENCIA QUE SUSTENTARA SUS ALEGACIONES EN LA PRIMERA VISTA EN SU FONDO.

ERRÓ EL TPI AL DETERMINAR EN LA SEGUNDA VISTA EN SU FONDO QUE EL TESTIGO DE LA PARTE APELADA ERA CUSTODIO DE LOS EXPEDIENTES DE NEGOCIO DE DICHA PARTE Y AL DETERMINAR NO HA LUGAR EL PEDIDO DE LA PARTE APELANTE DE NO ADMITIR LA PRUEBA PRESENTADA POR PARTE APELADA POR SER PRUEBA DE REFERENCIA Y AL DETERMINAR NO HA LUGAR LA SOLICITUD DE DESESTIMACIÓN CON PERJUICIO DE LA DEMANDA PRESENTADA.

---

[10] A solicitud de la parte apelada, el 26 de junio de 2025, el TPI emitió una *Orden* que se notificó al día siguiente, en la cual concedió a Island la suma adicional de $117.48 en concepto de costas y gastos incurridos en la tramitación del caso.

ERRÓ EL TPI AL INTERVENIR EN EL INTERROGATORIO DIRECTO DEL TESTIGO DE LA PARTE APELADA. TAL CONDUCTA DEL TPI DEMOSTRÓ QUE DE ESTE MEDIÓ PASIÓN, PREJUICIO O PARCIALIDAD, O QUE AL MENOS, INCURRIÓ EN ERROR MANIFIESTO.

En la misma fecha, el apelante presentó su *Método de Reproducción de Prueba Oral*. En esta, informó a este Tribunal de Apelaciones que la reproducción de la prueba oral de las vistas celebradas el 5 de mayo de 2025 y 9 de junio de 2025, era necesaria para la dilucidación del caso de epígrafe, puesto que impugnaba la apreciación de la prueba por parte del foro primario. Atendida dicha moción, el 11 de julio de 2025, emitimos una *Resolución* concediéndole el término de veinte (20) días para preparar la transcripción de la prueba oral, y diez (10) días adicionales para estipular su corrección y presentarla en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) de este foro apelativo. Tras una solicitud de prórroga, el 8 de septiembre de 2025, el apelante presentó la transcripción de la prueba oral solo de la vista del 9 de junio de 2025, la que acogimos como la estipulada. No obstante, el 29 de septiembre, instó una moción en la que adjuntó la transcripción de la prueba oral de la vista del 5 de mayo de 2025. Adujo que, por error e inadvertencia, no la incluyó en la moción del 8 de septiembre. En esta misma fecha, presentó su alegato suplementario. Al día siguiente, emitimos una *Resolución* en la que aceptamos la transcripción y la dimos por estipulada, como la anterior, más concedimos el término de treinta (30) a la parte apelada para presentar su alegato en oposición.

El 29 de octubre de 2025, la parte apelada presentó un escrito intitulado *Alegato en Oposición a la Apelación*. Así, nos damos por cumplidos y, decretamos perfeccionado el recurso.

Analizados los escritos de las partes, el expediente apelativo y las Transcripciones de la Prueba Oral (TPO); así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**La Regla 60 de las de Procedimiento Civil**

La Regla 60 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 60, establece un proceso sumario para resolver reclamaciones de deudas que no excedan los quince mil ($15,000) dólares de principal. El propósito primordial de esta regla es "agilizar y simplificar los procedimientos en acciones de reclamaciones de cuantías pequeñas, para así lograr la facilitación del acceso a los tribunales y una justicia más rápida, justa y económica en este tipo de reclamación". *Asoc. Res. Colinas Metro. v. SLG,* 156 DPR 88, 97 (2002); *Cooperativa v. Hernández Hernández,* 205 DPR 624, 631 (2020).

En particular y en lo pertinente al caso de epígrafe, la Regla 60, *supra,* establece que:

> Cuando se presente un pleito en cobro de una suma que no exceda los quince mil (15,000) dólares, excluyendo los intereses, y no se solicite en la demanda tramitar el caso bajo el procedimiento ordinario, [...]
>
> **La notificación-citación indicará la fecha señalada para la vista en su fondo, que se celebrará no más tarde de los tres (3) meses a partir de la presentación de la demanda, pero nunca antes de quince (15) días de la notificación a la parte demandada.** [...]
>
> ...
> La parte demandante podrá comparecer a la vista por sí o mediante representación legal. El tribunal entenderá en todas las cuestiones litigiosas en el acto de la vista y dictará sentencia inmediatamente. [...] Si la parte demandada no comparece y el tribunal determina que fue debidamente notificada y que le debe alguna suma a la parte demandante, será innecesaria la presentación de un testigo por parte del demandante y el tribunal dictará sentencia conforme a lo establecido en la Regla 45. Si se demuestra al tribunal que la parte demandada tiene alguna reclamación sustancial, o en el interés de la justicia, cualquiera de las partes tendrá derecho a solicitar que el pleito se continúe tramitando bajo el procedimiento ordinario prescrito por estas reglas o el tribunal podrá *motu proprio* ordenarlo, sin que sea necesario cancelar la diferencia en aranceles que correspondan al procedimiento ordinario. [...]

[Énfasis nuestro]

Al interpretar esta regla, el Tribunal Supremo expresó que "una vez superados [los] aspectos de notificació[n] y cuantía líquida y exigible, el tribunal entenderá en todas las cuestiones litigiosas y *dictará sentencia inmediatamente, sin dejar que el caso se prolongue.*" *Cooperativa v. Hernández Hernández, supra,* a la pág. 637. Véase, además, *Asoc. Res. Colinas Metro. v. SLG, supra,* a la pág. 100.

Por otra parte, al procedimiento establecido en la Regla 60, *supra,* le son aplicables las reglas del proceso civil ordinario de forma supletoria en tanto y en cuanto estas sean compatibles con el procedimiento sumario establecido en dicha regla. *Asoc. Res. Colinas Metro v. SLG,* supra, a la pág. 98; *Cooperativa v. Hernández Hernández,* supra, a la pág. 631 y *RMCA v. Mayol Bianchi,* supra, a las págs. 107–108. De hecho, algunas disposiciones del proceso ordinario le son incompatibles al proceso sumario por la naturaleza de este último. El Tribunal Supremo ha resuelto que el emplazamiento por edicto, la contestación a la demanda, el descubrimiento de prueba, las reconvenciones y la demanda contra terceros, entre otros, son preceptos incompatibles con esta herramienta sumaria. *Asoc. Res. Colinas Metro. v. SLG,* supra, pág. 99–100; *Cooperativa v. Hernández Hernández,* supra, a la pág. 631; *RMCA v. Mayol Bianchi,* supra, a la pág. 108.

De hecho, la propia Regla 60, antes citada, permite que un demandado solicite que el pleito iniciado, según el proceso sumario, sea tramitado posteriormente por la vía ordinaria en circunstancias en las que "se demuestr[e] al tribunal que la parte demandada tiene alguna reclamación sustancial, o en el interés de la justicia [...]". Asimismo, un tribunal puede *motu proprio* convertir un caso iniciado al amparo del procedimiento sumario de la citada regla al proceso ordinario, ya sea porque, entre otras circunstancias, el derecho de

cobro no surge claramente y se necesita hacer descubrimiento de prueba, existe una reconvención obligatoria o se necesita añadir a un tercer demandado. *Asoc. Res. Colinas Metro v. SLG, supra*, a las págs. 100–101. El reconocimiento de este derecho a las partes no implica que automáticamente la conversión deba ser concedida, sino que el tribunal de instancia deberá evaluar los méritos de la solicitud. *Cooperativa v. Hernández Hernández*, supra, a la pág. 637.

Consecuentemente, el Tribunal Supremo determinó que:

> [S]i a pesar de la diligencia del promovente de cumplir con las exigencias de la Regla 60 para ventilar sumariamente el pleito, esto no ha sido posible, lo que procede, en primer lugar, es la conversión del pleito al procedimiento civil ordinario, y no necesariamente la desestimación de la causa de acción. De modo que, siguiendo los pronunciamientos expuestos, queda en manos del foro de instancia asegurarse que la causa de acción amerite la conversión del procedimiento. Íd. pág. 640.

Por último, en cuanto a los conceptos de deuda vencida, líquida y exigible, el alto foro expresó en *RMCA v. Mayol Bianchi*, 208 DPR 100 (2021), lo siguiente:

> [...] ya hemos dicho que únicamente se pueden reclamar por vía judicial las deudas vencidas, líquidas y exigibles. Respecto a los últimos dos conceptos, hemos expresado que:
>
> [...] El vocablo "líquida" en relación con una cuenta, en lenguaje corriente significa el saldo "o residuo de cuantía cierta que resulta de la comparación del cargo con la data". Y la voz "exigible" refiriéndose a una obligación, significa que puede demandarse su cumplimiento.
>
> La deuda es líquida por ser cierta y determinada, y es exigible porque puede demandarse su cumplimiento. Así que, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha *sido aceptado como correcto por el deudor y que está vencido*".
>
> En el ámbito procesal, el hecho de que la deuda sea líquida y exigible en una demanda de cobro de dinero atendida conforme a la Regla 60 es un elemento que, además de la notificación-citación, debe ser superada por la parte promovente para que el tribunal pueda atender todas las cuestiones litigiosas y dictar sentencia inmediatamente. Sobre ese particular, el Prof. Rafael Hernández Colón comentó que la reclamación sustancial que pueda tener el demandado que requiera la conversión del procedimiento puede ser "porque el derecho de cobro no surge claro, se necesita hacer descubrimiento de prueba, se tiene una reconvención compulsoria o se necesita añadir un tercero demandado, entre otras cosas." *Íd.*, a las págs.

108-109.[11]

**La Regla 39.2 (c) de las de Procedimiento Civil, desestimación contra la prueba conocida como *"non suit"***

La Regla 39.2 inciso (c) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 39.2, regula la desestimación de un caso por insuficiencia de prueba de la siguiente manera:

> Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar a su derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tiene el efecto de una adjudicación en los méritos.

En *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011), el Tribunal Supremo elaboró los factores a tomarse en cuenta al adjudicar una solicitud de desestimación al amparo de esta regla como sigue:

> En una moción al amparo de la Regla 39.2(c), conocida como una moción contra la prueba o non-suit, **el tribunal está autorizado, luego de la presentación de prueba por parte del demandante, a aquilatar la misma y a formular su apreciación de los hechos, según la credibilidad que le haya merecido la evidencia**. Pero esa facultad debe ejercitarse después de un escrutinio sereno y cuidadoso de la prueba. En caso de duda, debe requerirse al demandado que presente su caso. En ese momento, le corresponde al tribunal determinar **si la prueba presentada por la parte demandante es suficiente por sí misma para satisfacer los requisitos de su particular causa de acción**.
>
> [...] Además dada la gravedad de una desestimación de la causa de acción, los tribunales deben ser cuidadosos al atender una moción al amparo de la Regla 39.2(c) pues conlleva el final de la reclamación de un demandante y de su día en corte. Se trata de una decisión que descansa en la sana discreción del tribunal. [nota al calce omitidas] [Énfasis nuestro]

---

[11] Notas al calce omitidas e itálicas en el original.

Por último, reiteramos que nuestro Tribunal Supremo ha sido enfático en que la moción de *"non suit"* solo procederá cuando el tribunal está plenamente convencido de que el demandante no tiene oportunidad de prevalecer. *Lebrón v. Díaz*, 166 DPR 89, 94-95 (2005).

**Prueba de Referencia**

La prueba de referencia constituye toda "declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 801 de las Reglas de Evidencia, 32 LPRA Ap. VI; *Pueblo v. Lugo López*, 214 DPR 660, 675 (2024). Cónsono con lo anterior, dado a los "peligros que entraña la admisión de una evidencia proveniente de un declarante a quien la parte contra quien se ofrece la declaración no ha confrontado ni contrainterrogado, la Regla 804 de Evidencia reconoce una prohibición general a la prueba de referencia, salvo unas exclusiones o excepciones particularmente definidas" (citas omitidas). *Íd.* El fundamento para la exclusión de este tipo de prueba responde a "la falta de oportunidad para contrainterrogar". *Pueblo v. Pérez Santos*, 195 DPR 262, 270 (2016).

Ahora bien, la Regla 805 de las Reglas de Evidencia, *supra*, enumera ciertas excepciones a la norma general de exclusión. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 817 (2020). En lo pertinente, el inciso F de la Regla 805, *supra*, dispone que, aun cuando la persona declarante esté disponible como testigo, una declaración no estará sujeta a la regla general de exclusión de prueba de referencia cuando:

> (F)*Récords de actividades que se realizan con regularidad*: Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho

escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, **según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad.** El término negocio, según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro. (G) Ausencia de entradas en los récords que se lleven conforme a las disposiciones del inciso (F): Evidencia de que un asunto no se incluyó en los escritos, informes, récords, memorandos o compilaciones de datos en cualquier formato, preparados conforme a las disposiciones del inciso (F), para probar que dicho asunto no ocurrió o no existió, si el asunto es del tipo que requiere que se lleven y conserven regularmente entradas en los escritos, informes, récords, memorandos o compilaciones de datos, a menos que las fuentes de información u otras circunstancias inspiren falta de confiabilidad.

En *H. R. Stationery, Inc., v. E.L.A.*, 119 DPR 129, 138 (1987), el Tribunal Supremo de Puerto Rico, evaluando la anterior Regla 65(F), explicó que el texto de dicha regla contempla cuatro supuestos sensiblemente distintos, a saber: (1) que el escrito o récord haya sido hecho durante el curso regular del negocio; (2) que haya sido hecho en o próximo al momento del acto, condición o suceso a que se refiere el récord; (3) que el custodio del escrito o récord, o algún otro testigo, declare sobre su identidad y método de preparación, y (4) que las fuentes de información, método y momento dela preparación del récord sean tales que indiquen su confiabilidad.

Se puntualizó también lo siguiente:

> Según se desprende del lenguaje explícito de la regla, antes de que pueda admitirse un documento en evidencia es necesario sentar adecuadamente las bases para su admisión. Más aún, ésta dispone la forma específica de sentar las bases; se requiere el testimonio de un testigo cualificado que declare sobre los tres requisitos adicionales que la norma exige como condición a la admisibilidad del récord de negocio. *Íd.*, pág. 139.

En este caso normativo, nuestro más alto foro se expresó sobre algunos de los factores o criterios que gravitan en el análisis

de, si un récord o documento alegadamente hecho en el curso ordinario de los negocios, es confiable. Estos factores son: (1) si la información recopilada es importante para el negocio en cuestión fuera del contexto litigioso en el que se ofrece; (2) si el récord contiene información fáctica relativamente simple y no evaluaciones y conclusiones; (3) si la persona que transmite la información y la persona que practica el asiento (que pueden ser personas distintas) son independientes de las partes en el pleito; (4) si la información está corroborada por evidencia independiente; y (5) si el registro se preparó por una persona con experiencia, y si se verificó su exactitud. *Íd.*, pág. 142 (Citas omitidas).

Por otro lado, la Regla 901 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 901, provee sobre la autenticación o identificación de la evidencia, en lo aquí pertinente, lo siguiente:

> REGLA 901. REQUISITO DE AUTENTICACIÓN O IDENTIFICACIÓN
>
> (A) El requisito de autenticación o identificación como una condición previa a la admisibilidad se satisface con la presentación de evidencia suficiente para sostener una determinación de que la materia en cuestión es lo que la persona proponente sostiene.
>
> (B) De conformidad con los requisitos del inciso (A) de esta Regla y sin que se interprete como una limitación, son ejemplos de autenticación o identificación los siguientes:
>
> > (1) Testimonio por testigo con conocimiento. - Testimonio de que una cosa es lo que se alega.
> >
> > (2) …
> >
> > (7) Contenido de escritos. - Un escrito podrá autenticarse con evidencia de que se refiere a, o contiene, asuntos que no es probable fueren conocidos por otra persona que no sea la que la parte que presenta la evidencia alega ser el autor del asunto.
> >
> > (8) …

Por su parte, la Regla 1002 de las Reglas de Evidencia, *supra*, dispone que "[p]ara probar el contenido de un escrito, grabación o fotografía se requiere la presentación del original de éstos". Por su parte, la Regla 1003 de las Reglas de Evidencia, *supra*, preceptúa

que "[u]n duplicado es tan admisible como el original a no ser que surja una genuina controversia sobre la autenticidad del original o que, bajo las circunstancias del caso, sea injusto admitir el duplicado en lugar del original."

Una vez el juzgador decida admitir la evidencia, por estimar que se presentó prueba suficiente para autenticar el objeto, tal determinación no deberá ser alterada en apelación a no ser por un claro abuso de discreción. *Pueblo v. Echevarría Rodríguez I,* 128 DPR 299, 349-350 (1991).

**La apreciación de la prueba y el estándar de revisión apelativa**

Nuestro más alto foro ha establecido claramente que los foros apelativos solo intervendrán con la apreciación de la prueba que haga el foro de instancia, cuando se demuestre que la intervención del juzgador sobre los hechos en controversia se encuentra viciada por pasión, prejuicio, parcialidad o error manifiesto. *Colón v. Lotería,* 167 DPR 625 (2006); *Colón v. Glamorous Nails,* 167 DPR 33 (2006); *Rodríguez v. Urban Brands,* 167 DPR 509 (2006); *SLG Giovanetti v. ELA,* 161 DPR 492, 518 (2004); *Trinidad v. Chade,* 153 DPR 280, 291 (2001). Esto implica que los tribunales apelativos deben rendir deferencia a la apreciación de la prueba que realiza un tribunal de instancia. *McConnell v. Palau,* 161 DPR 734, 750 (2004).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones ponderadas del foro de instancia. *Rolón v. Charlie Car Rental, Inc.,* 148 DPR 420, 433 (1999). Esto porque los juzgadores de primera instancia se encuentran en mejor posición de aquilatar la prueba testifical, observar el comportamiento de los testigos mientras declaran y adjudicar la credibilidad que merezcan. *Argüello v. Argüello,* 155 DPR 62, 79 (2001); *Orta v. Padilla,* 137 DPR 927, 937 (1995); *Monllor v. Soc. de Gananciales,* 138 DPR 600, 610 (1995).

Sobre el particular, las Reglas de Procedimiento Civil disponen que las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto, a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Regla 43.2, de las Reglas Procedimiento Civil, 32 LPRA Ap. III R. 43.2. Esto porque, al evaluar la prueba oral, el juzgador de instancia tiene que ponderar integradamente los siguientes aspectos: (1) el comportamiento del testigo mientras declara y la forma en que lo hace; (2) la naturaleza o carácter del testimonio; (3) el grado de capacidad del testigo para percibir, recordar o comunicar cualquier asunto sobre el cual declara; (4) la existencia o inexistencia de cualquier prejuicio, interés u otro motivo de parcialidad; (5) las manifestaciones anteriores del testigo; (6) el carácter o la conducta del testigo en cuanto a veracidad o mendacidad; y (7) la existencia o inexistencia de un hecho declarado por el testigo. Regla 44, inciso (B) (1-7) de las Reglas de Evidencia, 32 LPRA Ap. IV. En ese sentido, si al evaluar las transcripciones de la prueba oral, la naturaleza de los testimonios es creíble y los mismos no reflejan contradicciones, el foro apelativo no podrá sustituir el criterio del foro de instancia con el suyo propio.

### III.

El apelante planteó que el TPI erró al declarar *No Ha Lugar* a la solicitud de desestimación con perjuicio de la demanda presentada por Island, toda vez que este no presentó evidencia que sustentara sus alegaciones en la vista en su fondo celebrada el 5 de mayo de 2025. En su segundo señalamiento de error, argumentó que el TPI incidió al determinar que el testigo de la parte apelada era custodio de los expedientes de negocio de dicha parte y, por consiguiente, admitir la prueba presentada por ser prueba de referencia. Finalmente, en su tercer señalamiento de error, arguyó

que el foro primario erró al intervenir en el interrogatorio directo del testigo de la parte apelada, conducta que demostró que incurrió en error manifiesto, pasión, prejuicio o parcialidad.

Como indicamos, el señor Andrillón Alers, en el primer error del recurso, solicita que revoquemos la determinación emitida por el TPI el 5 de mayo de 2025, según recogida en la *Minuta* de la vista celebrada ese mismo día y, posteriormente establecida en la *Orden* recurrida emitida el mismo día, notificada el 8 de mayo siguiente. En la esta denegó la desestimación de la demanda.

Como expusimos previamente, el 4 de marzo de 2025, Island presentó la demanda sobre cobro de dinero bajo el proceso sumario de la Regla 60 de las de Procedimiento Civil, supra. Así las cosas, el **5 de mayo de 2025**, se celebró una *Vista* en la que la parte apelada solicitó un término adicional para ver el caso. Ello, pues, manifestó que no estaba preparado para atender la vista. Por su parte, el apelante solicitó la desestimación del caso de epígrafe. Atendidos los planteamientos de las partes, el TPI declaró *No Ha Lugar* a la solicitud del señor Andrillón y señaló vista para el 9 de junio de 2025.

Posteriormente, el señor Andrillón Alers presentó dos solicitudes de reconsideración y en la alternativa solicitud de determinaciones de hechos y conclusiones de derecho. En estas argumentó que, el proceso sumario de la Regla 60, *supra*, no permitía posponer la vista y extender los términos, puesto que su función era atender la controversia y emitir sentencia rápidamente. Finalmente, el 8 de mayo de 2025, el TPI emitió la *Orden* impugnada declarando *No Ha Lugar* a la moción de desestimación e indicó que, señalar vista para una fecha posterior no causaba ningún perjuicio al apelante. Además, indicó que, no tenía que realizar determinaciones iniciales o adicionales, toda vez que la vista no

había sido celebrada, y no se había dictado sentencia. Finalmente, la vista de Regla 60, *supra,* se llevó a cabo el **9 de junio de 2025.**

Según el precitado derecho, la Regla 60, *supra,* establece un proceso sumario para resolver reclamaciones de deudas que no excedan los quince mil ($15,000) dólares de principal. El propósito primordial de esta regla es "agilizar y simplificar los procedimientos en acciones de reclamaciones de cuantías pequeñas, para así lograr la facilitación del acceso a los tribunales y una justicia más rápida, justa y económica en este tipo de reclamación". *Asoc. Res. Colinas Metro. v. SLG,* supra. En particular, dicha regla dispone que el tribunal entenderá en todas las cuestiones litigiosas en el acto de la vista y dictará sentencia inmediatamente.

Nótese que el foro primario celebró la primera vista el 5 de mayo de 2025, en la cual las partes intentaron llegar a un acuerdo transaccional, pero no se concretó el mismo. Así, pues, el TPI reseñaló la vista en su fondo para el 9 de junio de 2025. Entiéndase, menos de un (1) mes desde que se celebró la vista inicial. Ciertamente, aunque el procedimiento de la Regla 60, *supra,* es uno sumario, cabe precisar que el señor Andrillón Alers no presentó las razones específicas por las cuales se podía ver afectado por señalar la vista para un mes posterior a la fecha inicial. Es decir, no se demostró que la suspensión y posterior celebración de la vista final le causara un perjuicio sustancial que le impidiera una defensa adecuada. Recordemos, que el foro primario asimismo lo razonó.

Además, no podemos obviar que el término máximo de tres (3) meses para celebrar la vista en su fondo, dispuesto en la Regla 60, *supra,* no es uno jurisdiccional y más aún, desde la presentación de la demanda, **el 4 de marzo de 2025**, hasta la celebración de la vista final, **el 9 de junio de 2025**, solo transcurrieron tres (3) meses y cinco (5) días (incluyendo los días 7 y 8 de junio que fueron sábado y domingo, respectivamente). Lo que no podemos considerar como

una dilación irrazonable en el proceso sumario de la Regla 60 de las de Procedimiento Civil, *supra.* Todo lo contrario, el TPI actuó diligentemente en la manera de conducir el proceso. Por ende, no podemos coincidir con lo que expresa el apelante en cuanto a que dicha actuación provocó que se hubiese violentado la naturaleza sumaria del proceso. Reiteramos que las partes se encontraban en negociaciones para transigir el pleito, y así fue informado al TPI por la representación legal de la parte apelada y confirmado por el abogado del señor Andrillón Alers.[12] **Tampoco podemos ignorar que, de la TPO de la vista del 5 de mayo, surge que quien propuso, primeramente, el 9 de junio como fecha hábil, a preguntas del TPI, fue el propio abogado del apelante**.[13]

Por su parte, se hace importante advertir que la referida regla es una guía estricta de trámite expedito dirigida al tribunal que administra y tiene bajo su exclusivo control el calendario de vistas. Cuando, como en este caso, por iniciativa propia el tribunal, o a petición de parte, se aplaza la celebración de una vista, **el foro no pierde jurisdicción**. En *Lagares vs. E.L.A*, 144 DPR 601, 617 (1997) el Tribunal Supremo decretó que:

> Debe tenerse en cuenta que la atribución de carácter jurisdiccional a una medida procesal tiene, evidentemente, graves consecuencias. Tiende a privar al foro judicial de autoridad para entender en un asunto y a privar a las partes de la oportunidad de ser oídas. En lo que aquí nos concierne concretamente, tendería a privar al tribunal sentenciador de la importante función de corregir sus propios errores. Por eso hemos señalado, aunque en otro contexto, que sólo puede determinarse la falta de jurisdicción de un tribunal sobre algún asunto si ello "se ha dispuesto claramente por ley". (Citas omitidas)

Así también, en el Informe de las Reglas de Procedimiento Civil de marzo de 2008, preparado por el Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo, sugiere que el término de

---

[12] Véase, TPO de la vista del 5 de mayo de 2025, a la pág. 5, líneas 3-18; y a la pág. 9, líneas 8-13.
[13] *Íd.*, a la pág. 10, líneas 16-25.

tres meses puede ser extendido a discreción del Tribunal: "se indicó en la regla que la notificación-citación debe indicar la fecha de la vista en su fondo, la cual no deberá ser más tarde de los tres (3) meses de presentada la demanda." *Comentarios a la Regla 60, Informe de las Reglas de Procedimiento Civil*, a la pág. 722. En este sentido, notamos que ese comentario lo que hace es instruir al tribunal sobre su deber de convocar a la vista dentro de un plazo no mayor de tres (3) meses. Por ello, resulta que el propósito evidente es darle prioridad en calendario, no establecer un plazo improrrogable.

De otro lado, en la discusión del primer error, el señor Andrillón Alers arguye que, en la vista del 5 de mayo de 2025, le solicitó al TPI la desestimación con perjuicio de la acción, a base de la insuficiencia de prueba de la parte apelada para demostrar su causa de acción en una vista en su fondo, o sea, en los méritos.  Con más detalle expuso que "5. Acto seguido la parte apelante expuso que estando las partes citadas para juicio la parte apelada no tenía los medios para demostrar sus alegaciones y solicitamos que se desestimara la acción legal en su contra por insuficiencia de prueba. Regla 39.2(c), supra. El TPI declaró no ha lugar dicha petición."[14]

De la lectura de la TPO de la vista del 5 de mayo de 2025, surge que, luego de que el TPI concediera un turno posterior para que las partes dialogaran, el representante legal de la parte apelada manifestó al tribunal que, al no aceptarse la oferta propuesta por el señor Andrillón Alers, solicitaba que se llevara a cabo la vista en su fondo y poder traer al testigo custodio de los récords, para que este pudiese ofrecer el testimonio, y presentar la evidencia para sustentar el reclamo. Solicitud concedida por el foro *a quo*.

---

[14] Véase, recurso de *Apelación*, a la pág. 12.

Por tanto, advertimos que la pretensión del apelante sobre la aplicación de la Regla 39.2 (c) de las de Procedimiento Civil, *supra*, a dicha etapa del proceso, según relata en el escrito y recogido en la *Minuta*, resulta ser contraria a derecho. Enfatizamos que, en la vista del 5 de mayo de 2025, la parte apelada, como demandante, no pasó prueba de su reclamación.

En conclusión, el primer error no se cometió.

En su segundo señalamiento de error, el apelante argumentó que el TPI incidió al determinar que el testigo de la parte apelada era custodio de los expedientes de negocio de dicha parte y, por consiguiente, admitir evidencia presentada por ser prueba de referencia.

Surge del recurso que el señor Andrillón Alers objetó ante el TPI la admisibilidad de los documentos marcados como Exhibits, excepto los Exhibits núms. 2 y 3 por ser documentos públicos, al entender que "Durante la vista celebrada el 9 de julio de 2025 la parte apelada no logró sentar las bases, respecto a que los documentos o récords hayan sido hechos durante el curso regular del negocio; que hayan sido hechos en o próximo al momento del acto, condición o suceso a los que se refieren los documentos, y que las fuentes de información, método y momento de la preparación de los documentos o récords indicaban su confiabilidad."[15] Por lo que,

---

[15] Véase, recurso de Apelación, a la pág. 18. Por su parte, el apelante, en el *Alegato Suplementario*, a la pág. 5, alegó que:

15. En específico, la parte apelada no pudo demostrar que las fuentes de información, método y momento de la preparación de los documentos que presentó indicaban su confiabilidad, y que su testigo conocía del método de preparación de estos. Regla 805(F) de las Reglas de Evidencia, 32 LPRA Ap. V, R.805(f). Véase **páginas 43, 47, 64, 66, 68, 70, 73, 74 y 76** donde objetamos que se permitiera al testigo de la parte apelada testificar como custodio de expediente de récord de negocio. Entrada 7, anejo I.

16. Por otro lado, en varias ocasiones objetamos el interrogatorio directo de la representación legal de la parte apelante a su testigo por este no sentar las bases previo a realizar preguntas sobre documentos que alegadamente era parte de un récord de negocio. Por ejemplo, en las **páginas 10-15** no se sentaron las bases para introducir una resolución corporativa y en las **páginas 36-41** se le entregó

entiende que este proceder no le permitió al TPI asegurarse sobre la confiabilidad de los documentos.

En el caso ante nuestra consideración, Island presentó como testigo al Sr. Kelvin Manuel Rosa Vélez, quien atestiguó ser el custodio de los expedientes y récords de negocios para la oficina de Island Portfolio Services. Además, afirmó que tuvo a su cargo la transferencia de los expedientes digitales y físicos entre Banco Popular y Fairway.[16]

El señor Rosa Vélez aseveró que reconoce el documento intitulado *Resolución Corporativa,* debido a que este forma parte del expediente y récord de negocios de Island Portfolio Services. Indicó que el mismo fue firmado por el Lcdo. Giovanni Dávila Egipciaco, Presidente actual de Island Portfolio Services, y estuvo presente cuando se redactó.[17] **El testigo declaró que dicho documento le permite comparecer a nombre de Island Portfolio Services y de la señora Keyshla Laureano Pérez**.

Una vez escuchado y aquilatado dicho testimonio, el foro primario marcó la *Resolución Corporativa* como Exhibit Núm. 1 de la parte apelada.[18] Surge de la TPO que el abogado del señor Andrillón Alers le realizó un *voir dire* al testigo sobre el documento y este aseguró que el mismo es copia fiel exacta del oficial que mantiene bajo bóveda.

Por tanto, no cabe duda de que el foro *a quo* entendió demostrado que el señor Rosa Vélez poseía la capacidad representativa en nombre de Island y, además, podía declarar al tener el conocimiento de los asuntos objeto del reclamo como custodio del expediente del caso. Más aún, quedó probado, mediante

---

al testigo una carta sin haberse sentado las bases para introducir dicho documento. id. En todas las ocasiones el TPI declaró nuestras objeciones no ha lugar incurriendo así en un error manifiesto. (Énfasis nuestro)

[16] Véase, TPO del 9 de junio de 2025, a las págs. 10-11.

[17] *Íd.*, a la pág. 12, líneas 1-14.

[18] *Íd.,* a la pág. 13, línea 6.

los Exhibits Núm. 2, Licencia DACO 2025, y Núm. 3 *Special Power of Attorney*, que Island tiene una licencia vigente como agencia de cobro expedida por el Departamento de Asuntos del Consumidor y es un agente gestor de Fairway.

De otra parte, en las páginas núm. 10-15, 36-41, 43, 47, 64, 66, 68, 70, 73, 74 y 76, identificadas en el *Alegato Suplementario* y en otras adicionales, el señor Andrillón Alers le planteó al TPI que el representante legal de Island no sentó adecuadamente las bases para que el señor Rosa Vélez pudiera declarar sobre los Exhibits cuya admisibilidad se cuestiona. De la lectura de la TPO, en especial de las referidas páginas, surge que la objeción fue una contínua y oportuna según exige la Regla 104 (a) de las Reglas de Evidencia, supra. Allí, se objetó constantemente que se permitiera al testigo de la parte apelada testificar como custodio de expediente de récord de negocio y se excluyeran los documentos por constituir prueba de referencia inadmisible.

No obstante, como indicamos previamente, el apelante no pudo impugnar la capacidad representativa del testigo ni que fuera el custodio de los expedientes. Sino que este se amparó en que no se cumplió con sentar adecuadamente las bases referentes, respecto a que: (a) documentos o récords hayan sido hechos durante el curso regular del negocio; (b) que hayan sido hechos en o próximo al momento del acto, condición o suceso a los que se refieren los documentos, y (c) que las fuentes de información, método y momento de la preparación de los documentos o récords indicaban su confiabilidad, según expusimos.

Surge de la TPO que, en cada instancia, en la que el abogado de Island intentó presentar un documento en evidencia, excepto los dos estipulados por ser documentos públicos, este le realizó preguntas introductorias específicas sobre los supuestos establecidos jurisprudencialmente para ser admitidos como récords

de actividades que se realizan con regularidad en los negocios, según exige la Regla 805 (F) de las Reglas de Evidencia, *supra*. Ejemplo de ello es el *Bill of Sale*, Exhibit Núm. 4, mediante el que se adquirió la cuenta del Banco Popular. El señor Rosa Vélez explicó que este es un récord de negocio, que forma parte del expediente de Island, que se prepara con regularidad y en este se confirma la transferencia de la cuenta entre el Banco Popular y Fairway.[19]

Otra instancia de la impugnación, por el apelante, la encontramos cuando se hizo referencia a la Carta de Aviso de Cobro, Exhibit núm. 6. Previa a ser marcada como Exhibit, surge de la TPO, que el señor Rosa Vélez señaló que las gestiones de cobro incluyen llamadas telefónicas y el envío de una carta certificada con acuse de recibo a la última dirección conocida del deudor que el prepara.[20] El testigo mencionó que reconocía dicha comunicación, ya que es parte del expediente y "esto lo tengo que trabajar yo a diario en el curso ordinario de los negocios".[21]

El proceder antes descrito, se repite en las otras instancias en las que Island pretendía incluir los demás documentos como Exhibits. Añadimos que el señor Rosa Vélez declaró que:[22]

> Lcdo. Ramos Colón
> Que [*sic*]cuáles otros documentos custodia el testigo.
> …
> R. De los otros documentos, básicamente todo el expediente. En este caso, tengo el … contrato, la venta que se realizó, cuándo se levantó la unidad, el relevo o carta para … relevo para poder entregar la unidad, eh, y proceso de la venta del vehículo en subasta, y la carta que se envía de la deficiencia a la última dirección conocida. Básicamente, ese … es parte de los expedientes.

Por tanto, es forzoso concluir la parte apelada cumplió cabalmente con los requisitos normativos para que todos los documentos fueran admitidos en evidencia como récords de

---

[19] Véase, TPO del 9 de junio de 2025, a la pág. 20, líneas 20-25; a la pág. 21, líneas 1-14; a la pág. 22, líneas 24-25; y, a la pág. 23, líneas 1-2.
[20] *Íd.*, a las págs. 35-43.
[21] *Íd.*, a la pág. 42, líneas 1-5.
[22] *Íd.*, a la pág. 48, líneas 22-23; y a la pág. 49, líneas 9-16.

actividades que se realizan con regularidad en los negocios, según requiere la Regla 805 (F) de las Reglas de Evidencia, *supra*. Reiteramos que el señor Rosa Vélez, durante su testimonio no controvertido, demostró que: (1) que el escrito o récord haya sido hecho durante el curso regular del negocio; (2) que haya sido hecho en o próximo al momento del acto, condición o suceso a que se refiere el récord; (3) que él, como custodio del escrito o récord, confirmó su identidad y método de preparación; y (4) que las fuentes de información, método y momento de la preparación del récord sean tales que indiquen su confiabilidad.

Por tanto, el foro primario, en el ejercicio de su sana discreción, admitió el testimonio del declarante como el custodio de los récords de negocio. A su vez, según las declaraciones del señor Rosa Vélez, creídas por la juzgadora de los hechos, surge que los documentos presentados en evidencia resultaron de una fuente confiable en el curso ordinario del negocio de la agencia de cobro. Por ello, colegimos que, el TPI actuó correctamente al admitir los documentos con el propósito de demostrar las gestiones de cobro de la deuda que tenía el señor Andrillón Alers.

En el análisis de este señalamiento de error, no olvidemos que el inciso (F) de la Regla 110 de las Reglas de Evidencia, *supra*, expresamente dispone que, "[e]n los casos civiles, la decisión de la juzgadora o del juzgador se hará mediante preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario".

Por su parte, el apelante plantea en el *Alegato Suplementario* que no se observó lo establecido en la Regla 902(K) de las Reglas de Evidencia, *supra*, para poder admitir los récords de negocio como evidencia. De entrada, aclaramos que dicho argumento es incorrecto debido a que no precede su aplicación ante el hecho indubitado de que en este caso se demostró la naturaleza de los documentos

mediante el testimonio directo del custodio de los mismos, ello según lo permite la Regla 805 (F) del mismo cuerpo de reglas. Lo que excluye la necesidad de presentar la certificación a la que se hace referencia en la referida norma. Resaltamos que la norma 805 (F), *supra*, en lo aquí pertinente, dispone que para lograr la admisión de un récord de actividades se tiene que demostrar que se hizo en el curso regular de dicha actividad de negocio, **según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad.** [23]

El Prof. Rolando Emmanuelli Jiménez, sobre la Regla 805 (F), *supra*, comenta que "Bajo la nueva Regla ya no es indispensable para su admisibilidad el testimonio de custodio de récords u otro testigo, si se utiliza una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación." R. Emmanuelli Jiménez, *Derecho Probatorio Puertorriqueño*, 4ta Ed., 2025, San Juan, Ediciones Situm, págs. 509-510.

Por tanto, concluimos que el segundo señalamiento de error no se cometió.

Finalmente, en su último señalamiento de error, el señor Andrillón Alers arguye que el foro primario erró al intervenir en el interrogatorio directo del testigo de la parte apelada, conducta que demostró que incurrió en error manifiesto, pasión, prejuicio o parcialidad. Luego de examinar la transcripción de la prueba oral,

---

[23] El uso de la conjunción disyuntiva "o", distinto al de la conjunción "y", tiene el efecto de desvincular las palabras entre las que es usada. *Cooperativa v. Hernández Hernández*, 205 DPR 624, 636 n.14 (2020); *Alejandro Rivera v. ELA*, 140 DPR 538, 544 (1996); *Mari Bras v. Alcaide*, 100 DPR 506 (1972); *Pueblo v. Mantilla*, 71 DPR 36 (1950)

determinamos que el Magistrado atendió las objeciones presentadas por la representación legal de la parte apelante. De igual forma, realizó cuestionamientos para comprender el contenido de los documentos presentados en evidencia. Así, pues, no tiene razón el señor Andrillón Alers al argumentar que el juez intervino en el interrogatorio demostrando que este incurrió en error manifiesto, pasión, prejuicio o parcialidad.

Recordemos que los foros apelativos no debemos intervenir con la apreciación de la prueba de los foros primarios, salvo que exista pasión, prejuicio, parcialidad o error manifiesto. Es decir, el foro primario merece deferencia ante planteamientos de error sobre admisibilidad de la prueba presentada y la apreciación de la credibilidad que le confirió. Examinado con detenimiento el recurso ante nuestra consideración, así como la transcripción de la prueba oral y la prueba documental que obra en autos, a nuestro juicio, el foro primario no incidió en su proceder.

En resumen, determinamos que se probó que Island era tenedor de dicho pagaré y, que la deuda era una líquida, vencida y exigible. A su vez, se probó que, Island apercibió al señor Andrillón Alers la cuantía adeudada y su oportunidad de impugnar la misma. Por su parte, la representación legal del apelante tuvo oportunidad de contrainterrogar al testigo de la parte apelada. Sin embargo, no logró rebatir el testimonio de este, ni tampoco sus argumentos. Tampoco aportó prueba testifical o documental que controvirtiera los documentos presentados y el testimonio del señor Rosa Vélez.

Así pues, en ausencia de fundamentos indicativos de prejuicio, pasión, parcialidad o error manifiesto, no nos encontramos en posición para sustituir el criterio utilizado por el foro primario en el ejercicio de su discreción.

En consecuencia, no se cometieron los errores señalados.

**IV.**

Por los fundamentos antes expuestos, confirmamos la *Orden* y la *Sentencia* apeladas.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones